# LEONARD L. RAMSEY v. CHICAGO GREAT WESTERN RAILWAY COMPANY.[1]

77 N. W. (2d) 176.

May 4, 1956—No. 36,684.

*Davis, Rerat, Yaeger & Lush* and *Paul F. Clements,* for appellant.
*Grannis & Grannis,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of dismissal entered May 9, 1955, by the District Court of Mower County.

The principal question for our determination is whether the trial court erred in its application of the law of forum non conveniens.

The action was brought by the plaintiff, a citizen and resident of Iowa, against the employer under the Federal Employers' Liability Act to recover damages for personal injury alleged to have been sustained because of defendant's negligence. It was undisputed that the accident occurred in the defendant's yard in Fort Dodge, Iowa.

The defendant moved for a dismissal of the action on the grounds of forum non conveniens and that to permit the trial of the matter in Mower County would be an undue burden on the taxpayers and the court of that county and would constitute an unreasonable and unnecessary burden on interstate commerce. In support of its mo-

[1]Certiorari denied October 8, 1956.

tion, defendant filed affidavits to the effect that Fort Dodge is 112.2 miles by rail from Austin; that plaintiff is a resident of Clarion, Iowa; that the defense of the action would require attendance in court of 11 persons as witnesses from the vicinity of Clarion and Fort Dodge; that the Mower County District Court had no power to issue subpoenas to bring in medical testimony; that the trial would consume six or seven days; and that the expense of a trial in Minnesota would be $1,500 to $2,000 more than if the case were tried in Iowa.

In opposition to the motion, plaintiff filed affidavits showing in substance that the residence of the plaintiff and the entire train crew at the time of the accident was 84 miles from Austin; that all of the witnesses to the accident were in the employ of the defendant and under its control; that regardless of the place of trial it would be likely that all of defendant's witnesses would lose some time; that the hospital records would be available at the time of the trial, by stipulation; that plaintiff was treated by only one doctor not a railroad doctor; and that such medical testimony of the railroad company doctors will be available at the time of the trial.

In Johnson v. Chicago, B. & Q. R. Co. 243 Minn. 58, 66 N. W. (2d) 763, this court stated that, as long as we treat citizens of our own state who are nonresidents on the same basis as we treat noncitizens who are nonresidents, the Federal Constitution or decision law does not bar our adoption of the forum non conveniens rule in declining jurisdiction over transitory causes of action. We further said that there is nothing in our state constitution which prevents the application of the forum non conveniens rule. This court also said there that the reasons for rejecting the doctrine of forum non conveniens in Boright v. Chicago, R. I. & P. Ry. Co. 180 Minn. 52, 230 N. W. 457, no longer exist and that the Boright case and others of like import in which the forum non conveniens rule had heretofore been rejected were expressly overruled.

We held in the Johnson case that the district courts of this state may fairly exercise their discretion in declining to accept jurisdiction of transitory causes of action brought here by citizens and non-

citizens of this state who are nonresidents when it fairly appears that it would be more equitable that the cause of action be tried in some other available court of competent jurisdiction. However, in the closing paragraph of the Johnson case we also said that, if the trial courts abused their discretion in border-state cases, relief would undoubtedly be available upon petition to this court.

It is our opinion that under that paragraph relief can be granted in this court in border-state cases if there is what we might consider an abuse of discretion on the part of the trial court in refusing to consider a case. If we are ever going to grant such relief to a plaintiff from a border state so as to permit trial in Minnesota, it is our further opinion that the fact situation in the instant case justifies it. Here the plaintiff employee lives only 84 miles by rail or 99 miles by highway from Austin. The accident happened at Fort Dodge, 112.2 miles by rail and 142 miles by highway from Austin. Clearly it cannot be said in this day and age with the quick methods of transportation by car that merely because of a state line anyone would be particularly inconvenienced in going that distance any more than it could be said that it would be impractical to try the case in Austin if the plaintiff lived or the accident occurred an equal distance from that city within the State of Minnesota. If we say under the facts of this case that no relief is available to an employee who seeks to try his case in Minnesota, it is difficult to visualize any situation which would permit relief under the last paragraph of the Johnson case, and its language would then be meaningless.

For the reasons above stated we believe that the plaintiff should have been permitted, under the facts and circumstances of the instant case, to have it tried in Austin at a time convenient to the District Court of Mower County.

Reversed.

DELL, CHIEF JUSTICE (concurring).

I concur in the opinion of Mr. Justice Frank T. Gallagher but would prefer to go one step further and hold, as I suggested in the concurring opinion in Johnson v. Chicago, B. & Q. R. Co. 243 Minn. 58, 79, 66 N. W. (2d) 763, 776, that, in order to avoid confusion and

to afford employees under the F. E. L. A. a reasonable choice of venue, causes of action which arise in an adjoining state or where the employee lives in an adjoining state are triable in this state as a matter of right at the option of the employee. This we may adopt as a rule of law since we are dealing with local law and policy.

As to border states we have every reason to withhold the application of the doctrine of forum non conveniens because of the heavy flow of commerce between border states and the complex problems that are bound to arise due to the necessity of treating citizens of this state, who are nonresidents, the same as noncitizen nonresidents in order not to violate the privileges and immunities clause of the Federal Constitution (U. S. Const. art. IV, § 2). Moreover, because of the constant travel to and fro of residents of contiguous states and the many and varied dealings and persistent trade between their people, border states stand in a separate class and peculiar relation one to the other that set them apart from noncontiguous states. For this reason there is nothing arbitrary in applying the doctrine to noncontiguous states and withholding its application as to contiguous states. It must not be overlooked that the doctrine applies to all transitory actions and not alone to F. E. L. A. actions.

To adopt the policy which I suggest will be in keeping with the spirit of § 56 of the F. E. L. A. (36 Stat. 291, 45 USCA, § 56). Moreover, it will avoid confusion and enable a litigant to know that when such an action is so started it cannot be dismissed on the basis of judicial discretion which may be exercised one way by one judge and a different way by another. Such a rule will assist in relieving the burden of busy courts in deciding venue questions such as the one presented here.

I do not agree with the philosophy of the dissent which has appeared since this concurring opinion was written. In the administration of justice—and there is no cause more sacred than the cause of justice—there ought to be a haven somewhere in between both extremes for the weak and the strong alike which courts should endeavor to find and preserve so that the weak may not harass the

strong nor the strong oppress the weak. That haven is not to be found in the philosophy of the dissent. The dissent, while relying upon and quoting at length from Gulf Oil Corp. v. Gilbert, 330 U. S. 501, 508, 67 S. Ct. 839, 843, 91 L. ed. 1055, 1062, neglects to point out that the court also said:

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy."

Moreover, as the final sentence of the third quoted paragraph and immediately between the two last quoted paragraphs from that opinion, the dissent has left out this all-important statement:

"* * * But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

The dissent has not properly construed the purpose and intent of the last paragraph of Johnson v. Chicago, B. & Q. R. Co. 243 Minn. 58, 66 N. W. (2d) 763, as I read it and understood it when it was written, and it has failed to give due consideration to another portion of that decision, namely, that the discretion of a trial court to dismiss an action under the rule of forum non conveniens is one to be cautiously exercised.

The record does not support the suggestion of the dissent that the courts of this state are being cluttered up, or will be, with out-of-state cases. To the contrary, it is a matter of common knowledge that the rural courts of Minnesota, including Mower County, are operating on a reasonably current basis. Under the facts of this case it was an abuse of discretion for the lower court to dismiss this action which it is our duty to correct and this we have done.

THOMAS GALLAGHER, JUSTICE (concurring).

I concur in the viewpoint expressed by Mr. Chief Justice Dell.

KNUTSON, JUSTICE (dissenting).

I cannot agree with the majority opinion. Apparently it is intended to rest this decision on the last statement of our opinion in Johnson v. Chicago, B. & Q. R. Co. 243 Minn. 58, 79, 66 N. W. (2d) 763, 776, where we said:

"If the trial courts abuse their discretion in the border-state cases suggested in the concurring opinion of Mr. Chief Justice Dell, relief will no doubt be available upon petition to this court."

It seems clear to me that, under any fair reading of the opinion in that case, the position of the majority is untenable. All that the statement says, in rather plain language, is that, if there is an *abuse* of discretion by the trial court, relief may be had here. Whatever else the statement intended to do, surely a construction of it which attempts not only to undermine the entire decision itself but to re-write the whole doctrine of forum non conveniens cannot be justified on any theory. It may have been unfortunate that it was included at all, but at best it simply is an assurance to those interested that, if trial courts abuse their discretion in applying the doctrine of forum non conveniens, relief may be had here. That follows even in the absence of such statement, if we properly exercise our appellate function. The statement neither adds to, nor detracts from, the decision itself.

Application of the doctrine of forum non conveniens involves the exercise of judicial discretion *by the trial court.*[2] The exercise of discretion requires the trial court to use its judgment based on the facts before it. "Discretion" is defined in Webster's New International Dictionary (1930) as "Freedom to decide or to act according to one's own judgment." In Chapman v. Dorsey, 230 Minn. 279, 285, 41 N. W. (2d) 438, 442, 16 A. L. R. (2d) 1015, 1021, we said:

"* * * Judicial discretion is the sound choosing by the court, subject to the guidance of the law, between doing or not doing a thing, the doing of which cannot be demanded as an absolute right of the party who asks that it be done."[3]

Abuse means improper use or application.[4] In order for the trial court to properly exercise its discretion in applying the doctrine of forum non conveniens, there are a number of factors it must take

[2]14 Am. Jur., Courts, § 230; Universal Adjustment Corp. v. Midland Bank, Ltd. 281 Mass. 303, 184 N. E. 152, 87 A. L. R. 1407.

[3]Bowers, Judicial Discretion of Trial Courts, §§ 10, 12.

[4]Bowers, Judicial Discretion of Trial Courts, §§ 12, 13.

into consideration.[5] Probably as good a statement of the principal factors involved as any is that of the United States Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U. S. 501, 507, 67 S. Ct. 839, 842, 91 L. ed. 1055, 1062, where the court said:

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. * * *

*   *   *   *   *

"* * * The doctrine leaves much to the discretion of the court to which plaintiff resorts, * * *.

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. * * *

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the

[5]Barrett, *The Doctrine of Forum Non Conveniens*, 35 Calif. L. Rev. 380, 402.

country where they can learn of it by report only. There is a local interest in having localized controversies decided at home."

While it has now been determined that 62 Stat. 937, 28 USCA, § 1404(a), is not a codification of the forum non conveniens rule (Norwood v. Kirkpatrick, 349 U. S. 29, 75 S. Ct. 544, 99 L. ed. 789), in that under the Federal statute the cause of action is transferred from one court to another instead of being dismissed as under the forum non conveniens rule, substantially the same factors are involved in an exercise of the court's discretion in applying one rule or the other. In discussing the factors to be considered, the court said in Chicago, R. I. & P. R. Co. v. Igoe (7 Cir.) 220 F. (2d) 299, 304, citing in support Gulf Oil Corp. v. Gilbert, *supra:*

"* * * We give little weight to the claim that plaintiff will be required to hire an Iowa attorney if the transfer is ordered.

"Factors under the statute which demonstrate that a transfer should be made are: convenience of witnesses of both plaintiff and defendant; the ease of access to sources of proof; the availability of compulsory process to compel the attendance of unwilling witnesses; the smaller amount of expense required for willing witnesses; the availability of a view of the premises; the congestion of the District Court calendar in the Northern District of Illinois, Eastern Division; that no controverted issue of fact depends upon any event that occurred in the Northern District of Illinois; and the burden of a jury trial should not be imposed upon the Northern District of Illinois, an area which has no relation to the litigation."

Our function on appeal is, or should be, limited to a determination of whether there has been an *abuse* of discretion. The question for us is not what we would have done had we been sitting as a trial judge. In Webber v. Webber, 157 Minn. 422, 427, 196 N. W. 646, 648, we said:

"* * * We cannot interfere with this award, unless there has been an abuse of discretion which means a discretion exercised to an end or purpose not justified by and clearly against reason and evidence; a clearly erroneous conclusion and judgment—one that is

clearly against the logic and effect of such facts as are presented in support of the application, or against the reasonable and probable deductions to be drawn from the facts disclosed. 1 C. J. 372."

In this case the affidavits in support of the motion for a dismissal have set forth that a large number of witnesses who reside in Iowa will be required for the trial and that they cannot be compelled to attend the trial in Minnesota; that the accident occurred on the tracks of the railway company in Iowa and that the witnesses who would be compelled to be brought from Iowa would have to testify as to the condition of defendant's tracks, the condition of defendant's train and cars, and matters of that kind. It also alleges the additional expense of bringing the witnesses to Minnesota and that the testimony of medical witnesses would have to be taken by deposition in Iowa, which would be ineffective in presenting the case to a jury. The affidavits show that several courts are available to plaintiff in the State of Iowa and that the case can be tried more expeditiously and with less expense in that state.

The only affidavits in opposition are those of two of the attorneys for plaintiff setting forth nothing which would contradict the allegations in the affidavits of defendant. Based on these affidavits and the knowledge which the court had of the congestion of its own calendar, the court granted defendant's motion. In its memorandum, among other things, the court said:

"* * * The clerk of the District Court advises that a check of his minutes for the calendar year of 1954 discloses that the time of the District Court in Mower County was taken up for 18 days in the trial of imported F.E.L.A. cases. There are, in addition, still three, possibly four (depending on the outcome of a pending motion), of these cases remaining for trial.

"The District Court calendar is now a heavy one, with purely local cases. Mower County cannot be expected to carry the additional burden arising from this kind of imported litigation."

The court had reference to 18 trial days. This actually represents almost four weeks of trial work. If the remaining three or four

cases take the time usually occupied by trial of this type of case, it is safe to say that an additional three weeks' time will be used up in these trials. This illustrates the situation in only one of our counties near the Iowa border. It is apparent, therefore, that the court, in exercising its discretion, considered a number of factors commonly involved in the application of the doctrine of forum non conveniens.

The decision in this case now holds that there was an abuse of discretion for the sole and simple reason that the distance between the place of the accident and the place of trial is only about 112.2 to 142 miles. No weight is given to the trial court's consideration of convenience or availability of witnesses; the congestion of the calendar in Mower County is ignored; all the factors involved, except only the number of miles of travel, apparently are discarded. The distance between the place of accident and place of trial no doubt is one factor to be considered, although a relatively unimportant one except as it affects the more important consideration of availability of witnesses and expense of trial. It does not and should not be the sole criterion. We might well ask: What would be our decision if this case were commenced in a court in the northern part of our state? Would we then hold that it was far enough so that the court could exercise its discretion? Cases may arise and do arise where it would be inequitable to refuse to entertain jurisdiction even though the case had its origin in a state far removed from our state. Suppose, for instance, a case where a person is injured in Oregon or Washington and is immediately brought here for medical attention. All medical witnesses may be available here and not in the state of origin. Other witnesses likewise may be here. In such a case, it undoubtedly would be an abuse of discretion to refuse to retain jurisdiction. Or cases may arise where there is no forum available in the state of origin because of the running of the statute of limitations or some other reason.[6] In such case we should not refuse to entertain jurisdiction regardless of distance.

---

[6]See, for instance, In re Estate of Daniel, 208 Minn. 420, 294 N. W. 465.

Nor do I believe that arbitrary state boundaries furnish any criterion for the application of the doctrine.[7] The same factors are involved in applying the doctrine no matter what state the case comes from. It seems to me that here we are not determining whether there has been an *abuse* of discretion but, instead, we are substituting our discretion for that of the trial judge.

If it is to be the rule in this state that distance is to be the sole criterion in applying the doctrine of forum non conveniens, it would seem that prudent attorneys engaged in this field of litigation might well be forewarned to start their actions in courts nearest the border of the state from which the case is imported or suffer the risk of having this court hold that they are far enough distant from the origin of the case so that the trial court may refuse to entertain jurisdiction. I do not believe that the doctrine of forum non conveniens should be emasculated in that manner. Nor can I see any justification for compelling the county of Mower, or any of our border counties, to assume the burden and expense of trying these cases when there is such a clear showing that the case can be more expeditiously and more inexpensively tried in the state of its origin. A determined effort has been made of late years, by cooperation of the judges and lawyers alike, to clear up our congested court calendars. Much progress has been and is being made. I do not think that anyone desires to deprive litigants of the use of our courts for the trial of cases properly here, but neither do I believe that litigants having cases properly here should be compelled to wait long periods of time before their cases can be tried in order that we accommodate those who wish to clutter up our court calendars with cases that can be tried more equitably in the state where they originated. We might well ask: Why should the State of Minnesota, by furnishing more judges, and the counties, by standing the court and jury expenses, be saddled with these costs in the absence of any showing that the litigants cannot have a fair trial where the case ought to be tried?

I think that we should approach this case as an appellate court. As such, we should determine whether there has been an abuse of

[7]See, 39 Minn. L. Rev. 115.

discretion. If we are going to substitute our discretion for that of the trial judge, we should say so. If we are going to determine whether there has been an abuse of discretion, we should take into consideration the state of the record as to all factors involved in the exercise of discretion by the trial court. If we do that, it seems to me that it is clear that there has been no abuse of discretion here. I think that the case should be affirmed.

NELSON, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Knutson.

MATSON, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Knutson.