DONALD A. BROOKS v. INTERNATIONAL BROTHERHOOD
OF BOILERMAKERS, IRON SHIP BUILDERS, BLACK-
SMITHS, FORGERS & HELPERS, AFL-CIO,
AND OTHERS.

114 N. W. (2d) 647.

March 30, 1962—No. 38,372.

---

[3]Hempel v. Hempel, 225 Minn. 287, 30 N. W. (2d) 594; Burke v. Burke, 208 Minn. 1, 292 N. W. 426; Spratt v. Spratt, 151 Minn. 458, 185 N. W. 509, 187 N. W. 227.

254

*Sigal, Savelkoul & Cohen* and *Gibson Langsdale,* for appellant.
*Howard, Peterson, LeFevere, Lefler & Haertzen,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court which denied the motion of the defendant International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO (hereinafter referred to as International) to dismiss the action or in lieu thereof to quash the purported service of the summons upon International.

Plaintiff brought suit against International and its Subordinate Lodge No. 647 as well as other persons individually and as officers of both organizations. He alleged in his complaint, among other things, that he is a resident of Hennepin County, Minnesota; that he is and at

all times material was a skilled journey craftsman in the boilermaker trade and craft, employment in which was his regular and sole means of making a living; that prior to October 3, 1958, he was a member of International and its Subordinate Lodge No. 647, the local union; that on October 3, 1958, he was expelled from the local union by a vote of its membership and has since been unable to secure employment at his trade; and that International wrongfully ratified and refused to investigate the acts of the local union and deceitfully withheld from plaintiff information concerning his right to a trial before his expulsion.

Plaintiff further alleged that International is a voluntary, unincorporated association, acting under a common name as a labor organization, with its principal office at Kansas City, Kansas; that it transacts business and other activities within the State of Minnesota through officers, agents, members, representatives, and employees thereof; that William A. Calvin is president, Homer E. Patton is secretary-treasurer and custodian of its membership records, and Russell K. Berg is vice president for the territorial section in which Minnesota is included, with authority over subordinate lodges therein, including Local 647; and that the latter is a voluntary, unincorporated association of workers in certain crafts, including boilermakers, acting under a common name as a labor organization in Minnesota pursuant to a charter of International.

Plaintiff asked for injunctive relief as set forth in the complaint requiring the above-named unions to reinstate him into membership and demanded judgment against the defendants and each of them in the sum of $100,000 with interest, costs and disbursements, and such other and further relief as the court might deem just.

The matter came on for hearing before the district court on a special and limited appearance on behalf of International for the sole purpose of questioning, contesting, and challenging the jurisdiction of the said district court. Motion was made to dismiss the action or, in lieu thereof, to quash the purported service of summons upon the defendant, and to quash the return of such purported service of summons for the reasons set forth in the notice of motion. The district court ordered that

the motion to quash be denied in all respects, from which order this appeal was taken.[1]

International raises two questions on appeal: (1) Did International, a nonresident labor organization, perform "any acts, business or activities within the State of Minnesota * * * resulting in damage or loss to person or property or giving rise to any cause of action" within the meaning of Minn. St. 540.152? (2) If § 540.152 is construed and made applicable to the facts in this case so as to permit constructive service of the summons upon International, is it unconstitutional?

■ Appellant argues that International performed no "acts, business or activities within the State of Minnesota * * * resulting in damage or loss to person or property or giving rise to any cause of action"; also that this is not an action "growing out of such acts, business or activities," within the meaning of § 540.152. Pertinent provisions of § 540.152 are as follows:

"The transaction of any acts, business or activities within the State of Minnesota by any officer, agent, representative, employee or member of any union or other groups or associations having officers, agents, members or property without the state on behalf of such union or other groups or associations or any of its members or affiliated local unions shall be deemed an appointment by such union or other groups or associations of the secretary of state of the State of Minnesota to be the true and lawful attorney of such union or other groups or associations, upon whom may be served all legal processes or notices in any action or proceeding against or involving said union or other groups or associations growing out of such acts, business or activities within the State of Minnesota resulting in damage or loss to person or property or giving rise to any cause of action under the laws of the State of Minnesota or to any matters or proceedings arising under the Minnesota Labor Relations Act, and such acts, business or activities shall be a signification of the agreement of said union or other groups or associations and its members that any such process or notice in any

---

[1]Such an order is appealable. Bubar v. Dizdar, 240 Minn. 26, 60 N. W. (2d) 77; Curran v. Nash, 224 Minn. 571, 29 N. W. (2d) 436, 174 A. L. R. 411.

action, matter or proceeding against or involving it, which is so served, shall be of the same legal force and validity as if served upon such union or other groups or associations and its members personally."

International claims that the trial court based its order upon the contention that International, by its exercise of various constitutional controls over certain actions of Local 647, and by having assisted in the negotiation of collective bargaining agreements covering members of Local 647 who work in Minnesota and elsewhere, thereby engaged in an "activity" within the State of Minnesota. It also argues that the trial court stressed in its memorandum the "union security" (union shop) clause appearing in the Missouri River Basin Agreement; the portion of the negotiations leading to that agreement which was held in Minnesota; and the allegations in the complaint that plaintiff, because of his expulsion from Local 647, had not been able to procure employment at his trade.

International then quotes in its brief from the memorandum of the trial court wherein it stated, "An act of negotiation would seem to constitute 'activity' within the state."

After quoting further excerpts from the court's memorandum, International argues that the error in the reasoning of the trial court lies in its failure to analyze the language of § 540.152. International contends that under this section there are three essential elements, each of which is a condition precedent to obtaining jurisdiction of a nonresident labor union or other unincorporated association by means of constructive service, viz:

(1) Legal action against the nonresident union or other association must grow out of acts, business, or activities engaged in or transacted by the nonresident defendant sought to be charged.

(2) Such acts, business, or activities must be carried on within the State of Minnesota.

(3) They must result in damage or loss to person or property, or give rise to a cause of action, and the legal action must grow out of such acts, business, or activities.

International claims that plaintiff's action did not grow out of anything that International did but rather that it grew out of the fact of

his expulsion by vote of the members of Local 647; that International performed no act within the State of Minnesota giving rise to any alleged cause of action; and that the writing of a letter by the International president in Kansas City, after the expulsion of plaintiff by Local 647, could hardly be said to have been performed within the State of Minnesota as required by § 540.152.

Plaintiff on the other hand claims that the only question involved under the facts of this case was whether substituted service of the summons and complaint on International was a valid service. He contends that § 540.152 was enacted to permit citizens of Minnesota, wronged by a nonresident labor union, to sue for relief in the courts of this state and that protection of a powerless individual member of the union against arbitrary action of a powerful parent international labor organization is a subject of particular public concern. He concludes that no principles of constitutional law or statutory construction would seem to immunize International from the jurisdiction of this state pursuant to the substituted service of process under the statute.

It appears to be the argument of International that § 540.152 should be limited in the instant case—that we should say that International performed no acts, business, or activities in Minnesota which had anything to do with the expulsion of plaintiff from Local 647, nor did it do anything which resulted in any damage or loss to the plaintiff, or which would give rise to a cause of action against International.

Section 540.152, which was enacted in 1947, has been before this court only once.[2] Other cases involving substituted service on foreign defendants have arisen under Minn. St. 303.13, subd. 1(3). See, e. g., Atkins v. Jones & Laughlin Steel Corp. 258 Minn. 571, 104 N. W. (2d) 888; Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670. That statute provides that a *foreign corporation* which "commits a tort in whole or in part in Minnesota against a resident of Minnesota" is subject to the jurisdiction of the Minnesota courts.

Since International is not a corporation, it cannot be served under

---

[2]In State v. Ritholz, 257 Minn. 201, 100 N. W. (2d) 722, it was held that this statute applies to foreign partnerships as well as to foreign labor unions.

§ 303.13, subd. 1(3). To obtain jurisdiction over unincorporated associations, the legislature has required in § 540.152 that there be acts, business, or activities in Minnesota which result in damage or which give rise to a cause of action.

It is apparent to us, under the facts introduced as evidence in the trial court on the matter before us, that International did perform certain acts, business, and activities in the State of Minnesota, as above referred to. Moreover, those acts and activities in Minnesota could have resulted in damage to plaintiff. Whether they did, we are not deciding here. International argues, however, that the act of expulsion by the local union, and not the activities of International, is the thing that gave rise to plaintiff's cause of action. But even if this is correct, § 540.152 provides for jurisdiction if the acts of International in Minnesota *either* resulted in damage *or* gave rise to a cause of action. If either of these causal connections is present, plaintiff's action is one growing out of the acts, business, or activities of the defendant, even though the cause of action itself may have arisen elsewhere.

A careful study of § 540.152 satisfies us that it requires a broader interpretation than that for which International contends. It may be correctly said that International did not instigate the disagreement with the officers or membership of Local 647 which resulted in the expulsion of plaintiff from the local union. If the activities of International in Minnesota were limited purely to the fact that the plaintiff wrote the president of the International protesting his expulsion from Local 647, and the reply indicated a "hands off" attitude on the part of International, we could not say that such a reply in itself could brand the acts of International as being "acts, business or activities within the State of Minnesota" under § 540.152. However, a careful examination of the entire record satisfies us that the activities of International in Minnesota in controlling Local 647 and its members were far in excess of merely replying to plaintiff's letter and that these activities could have resulted in damage or harm to plaintiff.

We are satisfied that International had a very important control over Local 647 and its activities within the State of Minnesota. Article 6, § 1, of the constitution of Local 647 provides in part that an applicant shall become a member of International when his signed application

and fee are received, approved, and recorded in the office of the International secretary-treasurer. The application form and cost or fee for initiation, reinstatement, or deposit of withdrawal card or service card, with signature of the applicant thereon, shall be forwarded to the International secretary-treasurer. Thereafter, the International secretary-treasurer collects a per capita tax from the subordinate lodge for each member of the latter. International Constitution, Article 6, § 2.

The International constitution, under which plaintiff's contract rights are claimed to arise, was first adopted June 29, 1953, in Minneapolis. It was revised and readopted at a Philadelphia convention held May 6 to 15, 1957.

The Missouri River Basin Agreement, referred to above, as it existed between June 20, 1958, and July 9, 1959, was negotiated in Minneapolis from May 19 to 21, 1958, and in Denver, Colorado, from June 18 to 20, 1958.[3]

More generally, International performed many acts in Minnesota through its agent, the local union. This agency is shown by the fact that the local union's constitution is prescribed by the International constitution, being set out in the latter at pp. 57 to 114. Moreover, the following controls are provided for in the local's constitution: All of the books of Local 647 must be audited by the "fidelity department" and a copy of the auditor's report must be forwarded to the International secretary-treasurer; the Local secretary must report monthly to International the membership rolls on a form provided by International; the Local secretary must also send to International quarterly financial reports; new members are not accepted until there is International approval; membership application forms are prescribed by International; all financial receipts must be purchased from International; when any Local's charter is suspended, all funds must be forwarded to Inter-

---

[3]Plaintiff claims that the union security clause in the Missouri River Basin Agreement is responsible for part of his damages. That clause (Article 3) provides that all the employees under the terms of the agreement must be or become members of the union 30 days thereafter; and that employees hired after the effective date of the agreement shall be or become members of the union 30 days after their date of employment, in accordance with the provisions of the National Labor Relations Act.

national; the International president must approve all Local bylaws; and no wage or other agreement is binding until approved by the International president.

The following controls are asserted in the International constitution: The powers of International are legislative, executive, and judicial; the executive council governs when a convention is not in session; the executive council issues charters; no strike ballots may be issued without the permission of International's president, who also has the power to suspend members and officers in emergencies and may appoint a committee to try such matters in other instances. He may also suspend district and local lodges; he may decide all questions of constitutional law; and he must be informed as to all arbitrations and as to the termination of all strikes. All constitutional provisions are obligatory upon district and local lodges.

It is apparent from these facts that International was directly engaged in acts, business,[4] and activities within the State of Minnesota.

■ In addition, § 540.152 is rendered applicable by acts of "any officer, *agent,* representative, employee or *member* of any union * * * on behalf of such union * * *." (Italics supplied.) Since each member and officer of Local 647 is also a member of International, when he is allowed to act on behalf of International the latter subjects itself to suit in Minnesota. The allegedly tortious expulsion by Local 647 also operated to expel plaintiff from International and, therefore, the acts of the Local were on behalf of International so far as to permit constructive service on International under the record here.

It is our opinion that under the facts and circumstances here the substituted service of the summons and complaint upon International constituted a valid service under § 540.152. We are not attempting, however, to pass on the merits of the claims of plaintiff in the instant

---

[4]Restatement, Conflict of Laws, § 167, *illustration* 11, states: "A is chartered as a corporation in state X to conduct a patriotic, secret, social and benevolent order. Its agents organize local bodies of members in state Y, a portion of the dues of each member going to organizing officials, another portion to the treasury of the corporation. The paraphernalia of members is obtained from the corporation. A is doing business in Y."

case. Rather we are limiting our decision to the question whether the substituted service above referred to was a valid one.

■ The question then arises whether the statute as so construed is constitutional. The question is essentially the same as that which has often arisen regarding § 303.13, subd. 1(3).

The guiding principle in these cases was laid down in International Shoe Co. v. Washington, 326 U. S. 310, 316, 66 S. Ct. 154, 158, 90 L. ed. 95, 102, 161 A. L. R. 1057, 1061, as follows:

"* * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

Thus notions of "consent," "doing business," and "presence" were laid to rest, and a test of "minimum contacts" was substituted.

This court has already decided that our courts have jurisdiction in cases where the alleged tortious activity occurred in another state, if damage resulted in Minnesota. Atkins v. Jones & Laughlin Steel Corp. *supra*; Adamek v. Michigan Door Co. 260 Minn. 54, 108 N. W. (2d) 607.

It is our opinion that if the defendant has had the requisite minimum contacts with a state, that state can take jurisdiction in a suit involving any allegedly related tort, though committed elsewhere, if damage resulted in that state. We recognize that "the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action *unconnected with the activities there.*" (Italics supplied.) International Shoe Co. v. Washington, 326 U. S. 310, 317, 66 S. Ct. 154, 159, 90 L. ed. 95, 102, 161 A. L. R. 1057, 1062. But where, as here, plaintiff is suing on a cause of action closely tied up with the harm resulting from defendant's many activities in a state, that state has jurisdiction to hear the suit. See, Note, *The Growth of the International Shoe Doctrine,* 16 U. of Chi. L. Rev. 523, 530.

This is especially so where the state has a strong interest in regulat-

ing the activities in which the defendant is engaged. See, Henry L. Doherty & Co. v. Goodman, 294 U. S. 623, 55 S. Ct. 553, 79 L. ed. 1097; McGee v. International Life Ins. Co. 355 U. S. 220, 78 S. Ct. 199, 2 L. ed. (2d) 223. In this case, Minnesota has a manifest interest in the livelihood of its citizens, free from the wrongful action of a non-resident parent labor organization. Gray v. Building Trades Council, 91 Minn. 171, 182, 97 N. W. 663, 667, 1118, 63 L. R. A. 753, 759, a case which authorized an injunction against labor union boy-cotting, stated:

"* * * The constitution of our state guaranties liberty to every citizen, and a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property, or character; and the rights so guarantied are fundamental, * * *. A person's occupation or calling, by means of which he earns a livelihood and endeavors to better his condition, and to provide for and support himself and those dependent upon him, is property within the meaning of the law, and entitled to protection as such; * * *."

See, also, Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 205 N. W. 630, 206 N. W. 396. Indeed, the very statute in question here, § 540.152, shows the concern of our legislature in this area.

In this case, International had not only minimum contacts with Minnesota, but a great number of such contacts, as previously set forth in this opinion.[5]

In addition, jurisdiction can constitutionally be based upon the actions of the members of the local union as agents for International. By recognizing that the members of the local union acted as agents for International in expelling plaintiff from the latter union, it is clear that

---

[5]It has been suggested that "minimum contacts" should include "other contacts of a beneficial nature, in addition to injury within the state, * * * before a foreign corporation is subjected to litigation within the state * * *." 2 Boston College Ind. & Com. L. Rev. 389, 394. But see, 46 Iowa L. Rev. 868. Even if this is the proper test, the facts in the present case more than satisfy it. International's activities within Minnesota were not confined to those which allegedly produced injury to plaintiff, but instead represent a broad pattern of general union activity of all varieties.

International itself committed the alleged tort within the State of Minnesota.

The trial court held that the local union itself was so completely controlled by International under the union constitutions that its acts could be attributed to International. The court concluded that "International could have little more authority without total direction of all activities of each Local. * * * International so completely controls the Locals that their acts may be attributed to it."

We agree that a subsidiary, even if it is not a formal agent for its parent, may be so closely controlled by the parent that the latter should be treated as engaging in the acts, business, or activities of the subsidiary and therefore be subject to suit in Minnesota. See, Foster, *Personal Jurisdiction Based on Local Causes of Action,* 1956 Wis. L. Rev. 522, 563; Developments in the Law—State-Court Jurisdiction, 73 Harv. L. Rev. 909, 932. That is precisely the case here and is another indication that International has sufficient contact with this state to be constitutionally subject to jurisdiction here by substituted service of process.

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration of decision of this case.