## FOURTH NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS v. HILSON INDUSTRIES, INC.

117 N. W. (2d) 732.

November 2, 1962—No. 38,411.

---

*Cronin, Mitchell & Spooner* and *Paul L. Spooner, Jr.,* for appellant.

*Wheeler, Fredrikson & Larson, T. E. Holloran,* and *Gary B. Crawford,* for respondent.

OTIS, JUSTICE.

Hilson Industries, Inc., an Ohio corporation, appeals from an order denying its motion to quash plaintiff's service of the summons and complaint under Minn. St. 303.13, subd. 1(3), and to dismiss the action on the ground the court has no jurisdiction over defendant.

Plaintiff sues to recover the face amount of three promissory notes executed by Hilson on March 17, 1960, payable to Atland Manufacturing Company, a Minnesota corporation, to whom the notes have now been reassigned after being negotiated to the Fourth Northwestern National Bank of Minneapolis which appears in the title as plaintiff. Each note is in the sum of $1,196.15, and each is payable at Atland's Minnesota office. Only the due dates differ. It is undisputed that the notes were executed in Ohio.

Since it now holds the notes, the parties have treated Atland as the proper substituted plaintiff under Rule 25.03 of Rules of Civil Procedure.

For purposes of appeal we accept as facts the uncontroverted recitations in various affidavits accompanying the moving papers in so far as they are germane to the issues which we must decide. It appears that in July of 1959 Hilson's predecessor, a Kentucky corporation, wrote to three companies in Minnesota engaged in the manufacture of cooling boxes inviting negotiations for the purchase of housing for automatic ice-vending machines of a walk-in variety designed for outdoor use. In response to Hilson's letter, one of Atland's officers telephoned for an appointment and traveled to Kentucky to discuss the terms under which Atland would be willing to do business with Hilson. Pursuant to these conversations, Hilson sent Atland an order for 50 coolers on August 5, 1959, the first of which was delivered

in Ohio on November 10, 1959. Between the order and delivery dates the Hilson company was converted from a Kentucky corporation to an Ohio corporation and has thereafter maintained that corporate identity.

It is undisputed that neither as a Kentucky nor Ohio corporation did Hilson advertise, conduct any sales campaign, locate any officer, agent, salesman, employee, or office in Minnesota, or secure a license to do business in this state.

It is the claim of Hilson that almost immediately after the cooling boxes were put into use, serious defects developed, consisting of warping, swelling, and buckling of the wood and a breaking away of the doors from their frames. Hilson's customers and distributors in Tennessee, Michigan, Indiana, West Virginia, and Ohio brought these complaints to Hilson's attention and demanded adjustments. Hilson states that it was obliged to spend substantial sums of money in making the boxes suitable for use as ice-vending machines. As a result of these expenses Hilson withheld payment on shipments which had been received by it, which prompted Atland to meet with Hilson for the purpose of compromising their differences. At this conference, held in Ohio on March 17, 1960, the three promissory notes which are the subject of this litigation were executed in acknowledgment of the balance due on the contract. It is uncontroverted that in all, six notes were executed and delivered in Ohio, in return for assurances by Atland that an equitable settlement would follow when the cost of necessary repairs had been determined. Hilson claims that the notes were given only as an accommodation to Atland because of the latter's urging and its representation that payment would not be required until reimbursement for necessary repairs was forthcoming. Notwithstanding these assurances, it is Hilson's contention that Atland proceeded to demand payment of the notes before fulfilling its obligation to make satisfactory adjustments. Prior to suit, it appears that one of the notes was voluntarily paid by Hilson.

This action was commenced by service of the summons and complaint upon the secretary of the State of Minnesota pursuant to § 303.13, subd. 1(3), which provides in part as follows:

"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort."

It is appellant's contention that the application of § 303.13 to the facts of this case is a denial of due process under U. S. Const. Amend. XIV and Minn. Const. art. 1, § 7, and constitutes an unreasonable burden on interstate commerce.

In considering whether the Minnesota statute is constitutional under the fact situation presented, we start with the premise that there is no contest or dispute over the execution and validity of the promissory notes upon which the action is based. The only fact issue in the case is whether there was adequate consideration given for the notes, or whether the breach of warranty Hilson claims constitutes a valid equitable defense. For whatever effect it may have, the situs of the controversy must be determined by reference to the breach of warranty issue.

The validity of statutes such as ours, in a multitude of fact situations, has been decided by rules enunciated in a series of cases by the United States Supreme Court beginning with International Shoe Co. v. Washington, 326 U. S. 310, 316, 66 S. Ct. 154, 158, 90 L. ed. 95, 102. That decision approved a Washington unemployment compensation statute which permitted assessments to be levied on nonresident corporations by mailing notice to the employer. In sustaining the Washington statute the court held that due process with respect to a nonresident defendant required that he have sufficient minimum contacts with the foreign state to avoid offending "traditional notions of fair play and substantial justice." The court emphasized the fact that the foreign corporation exercised a privilege in conducting activities

within the state and enjoyed the benefits and protection of its laws, giving rise to commensurate obligations. On this theory the statute was upheld. Of two decisions of the Supreme Court which followed, one seems to expand the concept of securing jurisdiction over nonresident corporations and the other appears to have contracted it. McGee v. International Life Ins. Co. 355 U. S. 220, 78 S. Ct. 199, 2 L. ed. (2d) 223, had to do with a contract of life insurance purchased from an Arizona corporation and later reinsured by a Texas corporation. Upon the death of the insured the beneficiary sued in California under a statute similar to ours, which the Supreme Court held was valid. It is significant that in the McGee case there was the *sale* of a policy to an *individual* residing in the forum. The court stressed the practical financial obstacles which inhere in requiring such a litigant to travel to the corporate defendant's jurisdiction in order to enforce a relatively small claim. The defense interposed was suicide, which involved the calling of witnesses residing in the plaintiff's jurisdiction.

The third case of particular significance is Hanson v. Denckla, 357 U. S. 235, 251, 78 S. Ct. 1228, 1238, 2 L. ed. (2d) 1283, 1296. An unsuccessful attempt was there made to secure jurisdiction over a nonresident trustee. The court stated:

"* * * In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U. S. 714, to the flexible standard of International Shoe Co. v. Washington, 326 U. S. 310. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U. S. 416, 418. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."

The Supreme Court pointed out that the defendant had exercised no

privilege in the forum state giving rise to any enforceable obligation. No benefit or protection was afforded by the forum.

Tested by these standards, we have upheld the validity of Minn. St. 303.13, subd. 1(3), and similar statutes in a number of cases. Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670; Atkins v. Jones & Laughlin Steel Corp. 258 Minn. 571, 104 N. W. (2d) 888; The Dahlberg Co. v. Western Hearing Aid Center, 259 Minn. 330, 107 N. W. (2d) 381; Adamek v. Michigan Door Co. 260 Minn. 54, 108 N. W. (2d) 607; Paulos v. Best Securities Inc. 260 Minn. 283, 109 N. W. (2d) 576; Brooks v. International Brotherhood of Boilermakers, 262 Minn. 253, 114 N. W. (2d) 647.

Without attempting to review in detail the facts in each of these decisions, it is sufficient to say that all of them except the Dahlberg case involved either torts committed in Minnesota or sales made by nonresident defendants to resident *individuals*.

The Beck case was a claim for a breach of warranty arising out of the sale of a trailer house which followed an advertising campaign in Minnesota. An exclusive county-wide sales franchise was granted a Minnesota distributor. Warranties were issued and service employees provided in Minnesota.

In the Paulos case we held that the sale of unregistered securities by individual and corporate nonresidents to a resident individual, in violation of the "blue-sky" laws, gave rise to a cause of action which conferred jurisdiction over the nonresidents under § 80.14, subd. 1, the provisions of which are akin to § 303.13. The Atkins, Adamek, and Brooks cases were all tort actions, the last involving a claim against a nonresident labor union which we found was subject to our jurisdiction under § 540.152.

We believe it is significant that the Beck, Adamek, and Paulos cases all resulted in the protection of *individuals* damaged in one way or another by nonresident defendants who sold their products in this state or whose products found their way here and caused injury to a Minnesota resident. In each instance the nonresident defendant had been the aggressor, so to speak, and had had substantial contact with the forum, invoking its protection for the privilege of doing

business here. It had subjected itself to the reciprocal obligation of amenability to suit in return for the right to compete for sales in our market places. However, there is a sharp distinction between suing a nonresident seller and invoking § 303.13 against a nonresident buyer.

"* * * The general tendency of courts to require less in the way of *sales* activity to bring a foreign corporation within the jurisdiction of a state has not been accompanied by any parallel lessening of requirements as to *purchasing* activities." (Italics supplied.) Waltham Precision Inst. Co. v. McDonnell Aircraft Corp. (D. Mass.) 203 F. Supp. 539, 541.

The only Minnesota case to reach this court where a nonresident defendant has been a buyer is The Dahlberg Co. v. Western Hearing Aid Center, 259 Minn. 330, 107 N. W. (2d) 381. Dahlberg was a Minnesota corporation manufacturing hearing aids, parts, and accessories. It sued various Oregon corporations on an open account and on promissory notes which were not only payable but were executed and delivered in this state. The contracts which gave rise to the obligations were in writing and were executed in Minnesota. A common officer of the nonresident defendants attended a number of meetings in Minnesota, discussing policies and plans. There was an extended course of dealings between the concerns and a close business relationship. The companies collaborated in working out advertising and promotion programs. The dominant nonresident corporation took an active part in managing the distribution and sales of the resident company's products which were delivered to the nonresident defendants in Minnesota, f.o.b. plaintiff's plant and office in Minneapolis. We held that defendants having enjoyed the benefits of the laws of this state and having had access to our courts to enforce the rights growing out of these transactions, and inasmuch as the relationship was created in this state, there was sufficient contact by them with our jurisdiction to make them amenable to process under § 303.13. In contrast with the instant case, there were in the Dahlberg case contacts between the resident and nonresident corporations which were numerous and intimate. Both the written contracts and the promissory notes were executed and delivered in this state.

We subscribe to the views expressed in Conn v. Whitmore, 9 Utah (2d) 250, 342 P. (2d) 871, where a resident of Illinois, invoking a statute similar to ours, brought an action against a resident of Utah in the Illinois courts on a check which he received for the sale of horses to the Utah defendant. When plaintiff sought to enforce in Utah the judgment he obtained in Illinois, the court refused to recognize its validity, holding that the Illinois statute as applied to the facts was invalid. The court pointed out that it was the resident plaintiff who proselyted for the business and whose offer was accepted in the foreign jurisdiction. The Utah court concluded that to recognize the Illinois judgment would have serious effects on commerce, saying (9 Utah [2d] 255, 342 P. [2d] 875):

"* * * Mail order houses, for example, accept and fill orders from all over the country. If they could sue on their accounts in their own state where it would be highly inconvenient for out-of-state customers to defend, then forward the judgments to the jurisdictions where the customers live, demanding full faith and credit for them, this would effectively prevent the customers from presenting a meritorious defense where one existed. The ultimate result would be to dissuade customers from doing business across state lines by mail. Thus what may seem a temporary advantage to such businesses, in all likelihood would be detrimental to them and to business generally in the long run."

As between Hilson and Atland we are not dealing with an unsophisticated local individual who has been pressured or importuned into entering an improvident transaction. We are not confronted with a relatively defenseless holder of a small claim who is in effect denied justice by being required to travel to a foreign jurisdiction. We have, instead, a corporate resident plaintiff who has taken the initiative in response to a nonresident corporation's inquiries. The nonresident corporation enjoys no particular privilege or protection in purchasing products from the resident seller, none akin to the rights exercised by a party seeking to distribute its products within the forum state. It would seem shortsighted indeed to discourage the sale of Minnesota products to nonresidents by subjecting buyers to our jurisdiction

where the contacts are so casual. The only connection with Minnesota in this case, however remote, is the fact that the notes are payable here. This situation arises out of an effort by the nonresident defendant to accommodate plaintiff. Fixing the place of payment at plaintiff's business residence is hardly the kind of commercial benefit to defendant that must be balanced by a countervailing capitulation to jurisdiction under § 303.13. For these reasons we believe that less than the minimum contacts required by "traditional notions of fair play and substantial justice" have been here proved.

One other important factor in deciding whether a nonresident corporation is amenable to process under a statute such as ours is the rule governing forum non conveniens. The evolution of this concept began with Hutchinson v. Chase & Gilbert (2 Cir.) 45 F. (2d) 139. In discussing whether a defendant is "present" within the jurisdiction, Judge Learned Hand stated (45 F. [2d] 141):

"* * * There must be some continuous dealings in the state of the forum; enough to demand a trial away from its home.

"This last appears to us to be really the controlling consideration, expressed shortly by the word 'presence' but involving an estimate of the inconveniences which would result from requiring it to defend, where it has been sued. * * * the loss and inconvenience to ordinary companies from being sued wherever they may chance to have any dealings whatever, cannot properly be ignored, and may constitute a test of jurisdiction, just as they do of venue, really a kindred matter."

Again in Kilpatrick v. Texas & P. Ry. Co. (2 Cir.) 166 F. (2d) 788, Judge Hand reiterates this principle and states that the question of jurisdiction over a nonresident in a particular forum is identical with the plea of forum non conveniens. He conceives it to be the court's duty to balance the conflict between the gain to plaintiff and the burden imposed on the defendant in retaining the action in plaintiff's forum. The United States Supreme Court has suggested some of the factors to be considered in invoking the rule of forum non conveniens in Gulf Oil Corp. v. Gilbert, 330 U. S. 501, 508, 67 S. Ct. 839, 843, 91 L. ed. 1055, 1062:

"* * * Important considerations are the relative ease of access to

sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

That court has adopted Judge Hand's views in the following language:

"* * * An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection."

International Shoe Co. v. Washington, 326 U. S. 310, 317, 66 S. Ct. 154, 158, 90 L. ed. 95, 102. See, also, Latimer v. S/A Industrias Reunidas F. Matarazzo (2 Cir.) 175 F. (2d) 184, 185; Lau v. Chicago & N. W. Ry. Co. 14 Wis. (2d) 329, 111 N. W. (2d) 158; L. D. Reeder Contractors v. Higgins Industries (9 Cir.) 265 F. (2d) 768, 775.

We thoroughly discussed the conflicting claims of inconvenience in Atkins v. Jones & Laughlin Steel Corp. 258 Minn. 571, 575, 104 N. W. (2d) 888, 891. In the Dahlberg case we recognized its effect on § 303.13 in this manner (259 Minn. 335, 107 N. W. [2d] 384):

"* * * The reasonableness of subjecting the defendant to jurisdiction under this rule may be tested by the standards analogous to those of forum non conveniens."

Speaking through Mr. Justice Knutson, we exhaustively considered the rule of forum non conveniens in Johnson v. Chicago, B. & Q. R. Co. 243 Minn. 58, 66 N. W. (2d) 763, and came to the conclusion that important considerations of policy required us to overrule our prior decisions rejecting it.[1]

As applied to the facts of the instant case, we believe the equities militate in defendant's favor. Having in mind that the dispute here

---

[1]See, also, Ramsey v. Chicago G. W. Ry. Co. 247 Minn. 217, 77 N. W. (2d) 176, and Hill v. Upper Mississippi Towing Corp. 252 Minn. 165, 89 N. W. (2d) 654.

does not concern the making or negotiating of the promissory notes but involves the alleged breach of warranty in the sale of the plaintiff's products, the manifest convenience of conducting the trial in the area where defendant is located greatly outweighs any inconvenience to plaintiff. The physical evidence of what occurred is actually located in the Ohio area. One cooler which defendant proposes to offer in evidence weighs more than 1½ tons and measures 8 feet 3 inches by 8 feet by 12 feet. It is proposed that the jury inspect it. Defendant also expresses an intent to call customers and distributors from Ohio and adjoining regions in Tennessee, Michigan, Indiana, and West Virginia. Since many of these witnesses are not under defendant's control, it seems only fair to encourage their attendance by permitting a forum more convenient to their residence than Minnesota. While inevitably this will add to plaintiff's expense, it is doubtful whether Atland will have the same problem of proof which confronts defendant. In any case, a balancing of inconvenience leads us to the conclusion that justice will be better served by permitting the trial in defendant's forum. With these considerations in mind we hold that as applied to the facts of this case, § 303.13 violates the due process provisions of the Fourteenth Amendment and that service of the summons thereunder is therefore quashed and the action dismissed. The order appealed from is accordingly reversed.

Reversed.