JAMES G. PAULOS v. BEST SECURITIES
INCORPORATED AND OTHERS.

109 N. W. (2d) 576.

June 9, 1961—No. 38,206.

284

*James G. Paulos,* pro se, and *Thomas J. Burke,* for appellant.

*Ryan, Kain, Mangan, Westphal & Kressel* and *James J. Moran,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Plaintiff, a Minnesota resident, instituted this action against Best Securities Incorporated, a New York corporation, not qualified to do

business in Minnesota or having a place of business here, and certain of its officers and agents, none of whom were physically present here, for violation of Minn. St. 80.07,[1] 80.12, subd. 1,[2] and 80.18,[3] in the sale of certain common stocks to plaintiff.

Pursuant to § 80.14, subd. 1,[4] service of process upon the defendants was made by leaving a copy of the summons and complaint for each of them with the commissioner of securities for the State of Minnesota as defendants' attorney for such service. No answers were interposed and subsequently plaintiff entered a default judgment against all of the defendants in the sum of $6,399.58.

---

[1]Minn. St. 80.07 provides in part: "No securities, except * * * [exceptions not applicable here] shall be offered for sale or sold within the state unless such securities have been registered * * *."

[2]Minn. St. 80.12, subd. 1, provides in part: "No broker or dealer shall offer for sale, sell or profess the business of selling, any securities unless or until be shall have been licensed as a broker or dealer as hereinafter provided; * * *."

[3]Minn. St. 80.18 provides in part: "No person shall himself, or by or through others, or as agent or otherwise, publish, circulate, distribute, or cause to be published, circulated, or distributed, in any manner, any circular, prospectus, printed matter, document, pamphlet, advertisement through any medium, or other matter, pertaining to any securities which have not been registered as herein provided; * * *.

"No circular, prospectus, advertisement, printed matter, document, pamphlet, leaflet, or other matter * * * containing or constituting an offer to sell any securities required to be registered in compliance with the provisions of sections 80.08 and 80.09, or rendering advice with relation thereto, shall be published, circulated, distributed, or caused to be published, circulated, or distributed, in any manner unless and until such advertising matter shall have been submitted in duplicate to the commission and approved by it."

[4]Minn. St. 80.14, subd. 1, provides: "Every nonresident person shall, before having any securities registered or being licensed * * * appoint the commissioner of securities * * * his true and lawful attorney upon whom may be served all legal process in any action * * *.

"The commission of any act which constitutes a violation of sections 80.05 to 80.27 by any nonresident person who has not theretofore appointed the commissioner of securities his attorney in compliance with the first paragraph of this section shall be conclusively deemed an irrevocable appoint-

This is an appeal from an order quashing such service and vacating the judgment. In a memorandum attached to the order, the trial court stated:

"It appears conclusively that the defendant corporation is a New York corporation and that the other defendants named in said action also reside outside of the State of Minnesota, and that they have never been engaged within the State of Minnesota in the sale of securities. It appears conclusively that the defendants never registered nor attempted to register the stocks which they subsequently sold to the plaintiff in this case. It further appears that they never appointed the Commissioners of Securities as their agent for the service of summons in this State. It further appears that they never through any agents within the State of Minnesota * * * carried on their operations to sell stocks. It appears conclusively that the sales here involved were based almost entirely on and arose out of telephone communications had between the defendants in New York and the plaintiff in the State of Minnesota. There appears to have been a small amount of mail matter passed between the parties also. In the light of the foregoing facts it seems too clear for serious argument that the sales here in question were in fact New York sales and that the defendants did nothing to subject them to any penalties under Minnesota law.

\* \* \* \* \*

"Under the factual situation here presented it is not possible to properly serve process upon the defendants through the Commissioner of Securities of the state of Minnesota * * *. Garber vs. Bancamerica-Blair Corp., 205 Minn. 275, 285 N. W. 723."

---

ment by such person of the commissioner of securities * * * as his true and lawful attorney upon whom may be served all legal process in any action * * * involving such violation, * * *.

"Service of process under this section shall be made by delivering a copy thereof to the commissioner of securities * * * accompanied by one additional copy for each person so served, and by the mailing by the commissioner of a copy thereof by registered mail, not later than the business day following the day of such service, to each person so served * * * at his last known address * * *."

Plaintiff contends that defendants' violations of §§ 80.07, 80.12, subd. 1, and 80.18 in effect constituted defendants' appointment of the Minnesota commissioner of securities as their attorney for the service of process[5] and subjected them to the jurisdiction of the Minnesota courts under § 80.14, subd. 1; and further that as to Best Securities its actions with reference to its sales to plaintiff of common stocks not registered here constituted "doing business" here as defined in § 303.13, subd. 1(3),[6] so as to afford the Minnesota courts a valid basis for jurisdiction of both the subject matter of the action and of this defendant.

It is not disputed that none of the individual defendants ever maintained offices or were physically present in this state during the transactions described; that neither Best Securities nor any of its officers or agents were ever present here during such transactions; that Best Securities was not at any time qualified to do business here as a foreign corporation; that plaintiff, a St. Paul attorney, was at no time present in New York during the transactions described; and that all communications between plaintiff and defendants were either by mail or by telephone.

The facts upon which plaintiff claims Minnesota courts acquired jurisdiction are as follows: Initially defendants mailed plaintiff a letter entitled "OUR INVITATION TO YOU" in which they proposed

---

[5]In Anderson v. Mikel Drilling Co. 257 Minn. 487, 102 N. W. (2d) 293, this court held that in the case of involuntary appointments of the commissioner of securities for substituted service of process on nonresidents under § 80.14, subd. 1, the jurisdiction of the Minnesota courts acquired thereby is limited to actions relating to or involving the specific violations of §§ 80.05 to 80.27, giving rise to such appointment.

[6]Minn. St. 303.13, subd. 1(3), provides in part: "If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota * * * *such acts shall be deemed to be doing business in Minnesota by the foreign corporation* and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort." (Italics supplied.)

to send plaintiff a weekly periodical designated "Best's News & Views," which purported to analyze news stories relative to stock market action. In response thereto plaintiff mailed to defendants a printed card which defendants had enclosed in their communication to plaintiff requesting that defendants mail plaintiff the regular issues of the periodical described. These periodicals which plaintiff subsequently received contained descriptions and information relative to certain corporations whose shares, though unregistered here and unlisted on any exchange, could be purchased through defendants. Included therein was Alaska International Corporation, a company engaged in various oil and development activities, stock in which defendants were offering for sale as indicated.

Subsequently, numerous long distance telephone conversations ensued between the parties. As a result of these conversations and the correspondence between the parties, plaintiff at various times between June 2, 1959, and February 9, 1960, purchased from defendants as brokers a total of 3,495 shares of Alaska International Corporation's common stock for the sum of $5,791.25. To pay for this plaintiff mailed his checks from St. Paul to defendants in New York. There defendants credited plaintiff's account with the shares of stock thus purchased, all of which were delivered to plaintiff except 800 shares covered by the last order.

On March 24, 1960, defendants called plaintiff from New York and advised him to sell his shares of Alaska International Corporation which he had purchased through them, as it had fallen in value to .625 per share—plaintiff's shares accordingly then having a total value of but $2,266.50. At the same time, defendants urged him to authorize them to use the proceeds of the contemplated sale for the purchase of stock in some other corporation which they represented as brokers. Later this same day they reported to plaintiff that they had sold all of his stock in Alaska International Corporation and had credited his account with $2,183.50. This sum is still held by them.

■ We are of the opinion that plaintiff's substituted service of process upon the defendants under § 80.14, subd. 1, as above described, was valid and gave the district court jurisdiction of both the subject matter of the action described in the complaint and of the defendants

named therein. The provisions of § 80.14, subd. 1, authorizing such service, were enacted by L. 1941, c. 547, § 11, following decisions in Garber v. Bancamerica-Blair Corp. 205 Minn. 275, 285 N. W. 723, and Sivertsen v. Bancamerica-Blair Corp. (D. Minn.) 43 F. Supp. 233.[7] Prior to that time the governing statutes (Mason St. 1927, §§ 3996-1 to 3996-28) contained no provision for the involuntary appointment of the commissioner of securities as attorney for service of process on nonresidents operating here in violation of Minnesota statutes relative to the sale of securities in Minnesota. Under § 80.14, subd. 1, as amended, a nonresident's violation of any of the provisions of §§ 80.05 to 80.27 is conclusively deemed an *irrevocable* appointment of the commissioner of securities by such nonresident as his true and lawful attorney for service of legal process in any action involving such violation. Here plaintiff alleged that defendants were guilty of violation of §§ 80.07, 80.12, subd. 1, and 80.18, and

---

[7]In Babcock v. Bancamerica-Blair Corp. 212 Minn. 428, 433, 4 N. W. (2d) 89, 91, (1942) the court stated: "In the absence of a statute declaring that a foreign corporation by coming into the state to transact business thereby automatically appoints the statutory named process agent, jurisdiction may not be obtained of the foreign corporation which neither is transacting business in the state at the time of the attempted service of summons nor has appointed a process agent. Our decisions have thus construed the statutes enacted prior to 1941 for the purpose of obtaining jurisdiction of foreign corporations. * * *

\*     \*     \*     \*     \*

"It is clear that every statute involved in the cited decisions [Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. ed. 1091; Consolidated Flour Mills Co. v. Muegge, 127 Okl. 295, 260 P. 745; Frazier v. Steel & Tube Co. 101 W. Va. 327, 132 S. E. 723, 45 A. L. R. 1442], designated to secure jurisdiction over foreign corporations and of nonresidents, declares and states in no uncertain terms that by the fact of *their mere entry into the state to transact business the process agent named in the statute becomes automatically their agent or attorney in fact to accept service of process in any action brought involving such business.* It is obvious that there is quite a difference between those statutes and § 3996-11 of our code. Of course, the additions to § 3996-11 by L. 1941, c. 547, § 11, [§ 80.14, subd. 1] cannot in reason apply to respondent's entry to transact business in securities in 1929." (Italics supplied.)

accordingly it would follow that under § 80.14, subd. 1, they became subject to the jurisdiction of the Minnesota courts through service of process upon the commissioner of securities.

■ That provisions relative to substituted service upon nonresidents of a state similar to those included in § 80.14, subd. 1, are valid has been established by a number of decisions of the United States Supreme Court. McGee v. International Life Ins. Co. 355 U. S. 220, 78 S. Ct. 199, 2 L. ed. (2d) 223; International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95.

Thus, in McGee v. International Life Ins. Co. *supra,* the United States Supreme Court upheld the validity of a California statute which gave California courts jurisdiction over foreign corporations not within the state on suits involving insurance contracts through service of process upon the California commissioner of insurance.[8] There on facts not dissimilar to those involved in the instant case, the United States Supreme Court stated (355 U. S. 222, 78 S. Ct. 200, 2 L. ed. [2d] 225):

"* * * In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. * * * in International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95, the Court decided that 'due process

---

[8]California Insurance Code, § 1610, provides: "Any of the acts described in Section 1611, when effected in this State, by mail or otherwise, by a foreign or alien insurer which is nonadmitted at the time of the solicitation, issuance or delivery by it of contracts of insurance to residents * * * is equivalent to and shall constitute an appointment by such insurer of the commissioner [of insurance] * * * to be its true and lawful attorney, upon whom may be served all lawful process in any action * * * instituted by or on behalf of an insured or beneficiary arising out of any such contracts of insurance, * * *."

Section 1611 provides: "The acts referred to in Section 1610 are:

"(1) The issuance or delivery to residents * * * of contracts of insurance * * *.

"(2) The solicitation of applications for such contracts.

"(3) The collection of premiums * * * for such contracts.

"(4) Any other transaction of business arising out of such contracts."

requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' * * *

* * * * *

"* * * It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. Cf. Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. ed. 1091; Henry L. Doherty & Co. v. Goodman, 294 U. S. 623, 55 S. Ct. 553, 79 L. ed. 1097; Pennoyer v. Neff, 95 U. S. 714, 735, 24 L. ed. 565. The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable."

■ It seems clear that the instant case falls within the foregoing principles, and that thereunder § 80.14, subd. 1, must be construed as valid. The facts as to defendants' contacts and actions with reference to plaintiff, a Minnesota resident, and in offering for sale and selling to him the shares of stock described do not vary greatly from those involved in McGee v. International Life Ins. Co. *supra.* Likewise, it cannot be denied that here Minnesota has a manifest interest in providing an effective means of redress for its residents against nonresidents involved in selling securities to them in violation of legislation designed for their protection. See, Henry L. Doherty & Co. v. Goodman, 294 U. S. 623, 55 S. Ct. 553, 79 L. ed. 1097. It must follow that plaintiff's service of process upon the commissioner of securities as defendants' attorney was valid and proper and subjected defendants as well as the subject matter of the action to the jurisdiction of the Minnesota court.

■ Insofar as Best Securities is concerned, it may be said that under § 303.13, subd. 1(3), above quoted, its actions as above described

constituted "doing business" in Minnesota. This section provides that a foreign corporation shall be deemed as "doing business" here if it enters into a contract with a resident, which contract is to be performed in whole or in part within the state. Obviously, the acts of Best Securities in promoting and consummating a series of stock sales to plaintiff in Minnesota, through repeated long distance telephone and mail communications, would fall within this definition. Certainly plaintiff's payments for such shares and their ultimate delivery to him were acts, some part of which at least were to be performed in Minnesota. Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670; Schilling v. Roux Distributing Co. Inc. 240 Minn. 71, 59 N. W. (2d) 907. It would follow that under § 303.13, subd. 1(3), such actions were sufficient to give the Minnesota court jurisdiction of Best Securities as a foreign corporation doing business here.

Order appealed from is reversed and judgment ordered reinstated.

MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.