Heinz **KORNFUEHRER, dba The Clamp Back Organization, Plaintiff,**

v.

**PHILADELPHIA BINDERY, INC.,**
**Defendant.**

No. 4–64–Civ. 241.

United States District Court
D. Minnesota,
Fourth Division.
Jan. 4, 1965.

158

Lawrence Zelle, Roberta K. Levy and Robins, Davis & Lyons, Minneapolis, Minn., for plaintiff.

Franklin D. Gray and Cant, Haverstock, Beardsley, Gray & Plant, Minneapolis, Minn., for defendant.

LARSON, District Judge.

This action is now before the Court on a motion by the defendant to quash the service of process and dismiss the action.

Plaintiff Heinz Kornfuehrer is a resident of Minnesota. The defendant Philadelphia Bindery, Inc., (Bindery), is a Pennsylvania corporation with its principal place of business in Philadelphia.

Early in February, 1963, Kornfuehrer wrote the Bindery to ask if it manufactured spring back binders. A series of letters followed in which the parties discussed specifications and terms. For the purposes of this opinion, it may be assumed that in late March Kornfuehrer placed an order for 7,500 binders and the Bindery accepted it.[1] A few days later the Bindery wrote to Kornfuehrer telling him that it had made an error in its cost estimates and would not be able to produce exactly the type of binder he wanted except at a substantially higher cost. Kornfuehrer replied that he had already made commitments which prevented him from allowing the order to be cancelled and he eventually instituted this suit for breach of contract.

Service of process was made according to the terms of Minn.Stat. § 303.13 Subd. 1(3).[2] The only questions now before the Court are whether the facts of the transaction allow the One Act statute to be

---

[1] There is a question as to just which documents form the contract and I do not mean to indicate any final decision on the issue by this characterization. All that is material here is that both parties thought they had reached agreement on an order. That much plainly appears from their letters.

The plaintiff's burden of proof as to the existence of a contract is met by the letters attached to the pleadings. Cf. Williams v. Connolly, 227 F.Supp. 539, 548–549 (D.Minn.1964).

The case has not developed enough to know whether one of the defenses will be that there was no contract because of a failure to agree on an essential term. Nothing in the affidavit or pleadings before me indicates that this is impossible, and I do not mean to express any opinion on the point.

[2] Minn.Stat. § 303.13 Subd. 1(3) (1961) provides:

"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state, together with a fee of $6 and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of such mailing, notwithstanding any other provision of the law. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota."

Hereafter this statute will be referred to as the One Act statute.

used and, if so, whether its application would violate the constitutional requirement of due process of law.

The first issue is entirely a matter of State law and this Court feels little hesitation about holding that the Minnesota Supreme Court would conclude that the transaction here fell within the terms of the One Act statute. The statute requires only that a portion of the contract is to be performed by either of the parties in Minnesota.

 Both parties obviously contemplated that Kornfuehrer would accept the goods and pay for them in Minnesota. This alone brings the case within the scope of the statute.[3]

 The fact that the Bindery was to ship the goods into Minnesota would also satisfy the statutory tests. The shipment was to be f. o. b. Philadelphia and those shipping terms have served as the basis for an argument on the part of the Bindery that no part of the contract was to be performed by it in Minnesota.

Actually the argument seems irrelevant. If the transfer of the binders is not considered a part of the defendant's performance, then it is part of the plaintiff's. Any realistic treatment of the transaction must view the carrier bringing the shipment as the agent of one or both of the parties.[4] As mentioned

3. Paulos v. Best Securities, Inc., 260 Minn. 283, 109 N.W.2d 576 (1961) (The plaintiff had contracted to buy securities from the defendant as a result of telephone and mail communication. No agent of the defendant ever entered Minnesota. As one of its alternate holdings the Minnesota Supreme Court held that "plaintiff's payments for such shares and their ultimate delivery to him were acts" within the meaning of the One Act statute.) In general, the Minnesota Supreme Court appears to have decided to read the One Act statute broadly enough to include virtually any transaction, leaving due process requirements as the only limitation on State personal jurisdiction over non-residents. Compare Paulos v. Best Securities, Inc., supra, with Fourth Northwestern Nat'l Bank of Minneapolis v. Hilson Industries, Inc., 264 Minn. 110, 117 N.W.2d 732 (1962).

There is nothing specific in the letters between the parties as to how payment should be made. Kornfuehrer has submitted an affidavit indicating that he intended to pay for the binders by check and that he was looking forward to a long business relationship with the Bindery. The affidavit was filed over two months after this motion was originally argued. Fed.R.Civ.P. 6(d) provides that affidavits opposing a motion "may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time." The Bindery urges that this affidavit should not be accepted as part of the record. The filing of affidavits beyond the time limits required by the Rules is not to be encouraged. The late-filed affidavit will be accepted since Fed.R.Civ.P. 59(c)

would permit exactly the same material to be brought before the Court on a motion to amend any Order entered. The Court feels, furthermore, that there is nothing in the affidavit which has any effect on the decision on this motion. The statement that payment was to be by check is superfluous. Anyone reading the letters between the parties could have no doubt that Kornfuehrer intended to send payment for the goods from Minnesota in one form or another. Even if he had planned to go to Philadelphia and pay the Bindery in cash, he would have had to perform preparatory acts here in Minnesota which would fall within the terms of the One Act statute as interpreted by Paulos v. Best Securities, Inc., supra. Jurisdiction under the statute is also supported by the anticipated transportation of the goods into Minnesota and the fact that they were to be accepted here.

The Court agrees with the defendant that the fact that the plaintiff expected a long course of business dealings between the parties is irrelevant where there is no showing that the Bindery share these expectations.

4. Cf. Wisconsin Metal & Chemical Corp. v. De Zurik Corp., 222 F.Supp. 119, 120–21 (E.D.Wis.1963). But cf. Bard v. Bemidji Bottle Gas Co., 23 F.R.D. 299 (D.Minn.1958). (The defendant places some reliance on this case. In it Judge Nordbye was forced to interpret the One Act statute before any of the Minnesota decisions I have relied on were rendered. Later decisions of the Minnesota Supreme Court have not followed his interpretation, and those decisions are binding on me in applying the statute.) To the ex-

earlier, the One Act statute applies when an act of either party is to be performed in Minnesota.

■■ The closer question is whether the Bindery had sufficient "minimum contacts" with Minnesota to permit Minnesota to exercise personal jurisdiction over it. The only contact the Bindery has had with this State is that it entered a contract by mail to sell goods here to a Minnesota resident.

The principal case in this area is McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Actually, McGee is clearly controlling unless the fact that an insurance contract was involved is sufficient to distinguish it.[5] In allowing California to take jurisdiction over a Texas insurance company which had contracted by mail to insure a California resident, the Court said:

"It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. * * * The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died.

It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses— as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process." [6] (Citations omitted.)

The legal issues in McGee were so similar to those raised here that a close examination of the factors which the Court thought gave the contract a substantial connection with California seems appropriate. There are only three.[7]

---

tent that Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4th Cir. 1956) might suggest a contrary conclusion, my doubts about that case have already been expressed at length in Williams v. Connolly, 227 F.Supp. 539, 547–548 (D.Minn.1964).

It seems that the shipping terms should also be irrelevant on the issue of whether sufficient minimum contacts exists to allow Minnesota to exercise jurisdiction in this case. The Bindery consigns the goods to the carrier for delivery in Minnesota and retains the limited right of stoppage in transit. Even more important, the shipping terms are only a method for designating which of the parties will bear the cost of shipping and the risk of loss. That is all they are designed to do. In this case, for instance, it is inconceivable that the Bindery would not have agreed to ship the goods f. o. b. Minneapolis if the plaintiff had requested those terms. The Bindery would merely have increased its prices to cover the extra shipping and insurance costs.

5. E. g., by selling insurance a company indicates a willingness to investigate claims within the State where the insured has his residence. For other possible distinctions, see Developments in the Law— State Court Jurisdiction, 73 Harv.L.Rev. 909, 928 (1960). This article also contains a thorough discussion of the evolution of the right of State courts to extend their jurisdiction. My opinion in Williams v. Connolly, supra, note 4, also discusses this area in detail.

6. 355 U.S. 223–224, 78 S.Ct. 201.

7. There were two other factors present in McGee which might be considered significant, though not relied upon by the Court. The insurance company had solicited the plaintiff's intestate by mail in order to get him to maintain his coverage with it in the first place. Some cases have put emphasis on the fact that the non-resident begins the negotiations between the parties. The Supreme Court in McGee placed no reliance on the fact, and this Court feels that who makes the first contact is not an important

1. *The contract was delivered in the forum State.* Insofar as this indicates either that (a) one party was a resident of the forum State at the time the contract was formed, or (b) the non-resident party was aware that he was transacting business activities in the forum, this would appear to be an important factor. Otherwise, the fact of spot of delivery would seem minor. Both the elements mentioned are present in this case, although there was no integrated contractual document.

2. *Payment was made from the forum State.* In this case, the Bindery refused to proceed before any payments were due, so none were ever actually made. Yet the parties obviously contemplated that payment would be made from Minnesota, and this would have equal value insofar as it indicates that Minnesota was in the minds of the parties when entering the business transaction.

3. *The plaintiff was a resident of the forum State at the time the contract was breached.* That is also true here and would seem quite important. See, however, footnote 1 as to existence of contract.

Joined with this is the problem of whether the State's interest in providing a forum for suits against foreign insurance companies is greater than its interest in other contract actions. The Supreme Court does not appear to rely heavily on any such factor in McGee and this Court does not see any substantial difference.[8] The real thrust of McGee is that changing patterns of business activity have made an extension of the power of a State to exercise personal jurisdiction both necessary and reasonable. The Court pointed out that:

> "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." [9]

The opinion in McGee also points out that witnesses are as likely to be in one State as another. While this does not actually go toward establishing minimum contacts,[10] it does emphasize how appropriate a relaxation of earlier rules governing jurisdiction is. In this case the major witnesses (aside from Kornfuehrer and the president of the Bindery)

---

point. Most new business probably comes to a company as a result of its advertising or the efforts of its sales personnel. But on some occasions advertising or recommendations of other customers will cause a prospective customer to make the initial contact with the firm. The business relations between the parties will not usually depend on the method by which contact was established. Therefore, once the non-resident undertakes to perform a business contract with a Minnesota resident, this Court does not feel that the question of who made the first contact is material.

The McGee opinion also points out that the important witnesses may often reside in the plaintiff's home State. As I read the opinion, this is not a reason for upholding jurisdiction on the McGee facts alone, but is treated as a reason justifying the holding of the case as to what constitutes "substantial contacts" allowing the exercise of a State's judicial power over non-resident parties. Cf. Hanson v. Denkla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

8. Accord: Wisconsin Metal & Chemical Corp. v. De Zurik Corp., supra, n. 4, 222 F.Supp. at 123.

9. 355 U.S. 222–223, 78 S.Ct. 201.

10. See note 7 supra.

will be people from the Minnesota area testifying on the issue of damages.

Thus, this Court has concluded that the fact that the Bindery had entered a contract with a Minnesota resident to supply the resident with its product in the normal course of its profit-making activities was sufficient contact with Minnesota to allow the State to exercise personal jurisdiction for causes of action arising out of the contract.[11] There are many cases which can be viewed as forerunners of this one.[12] It is true that this result creates inconvenience to the Bindery, but as one Court has noted:

"Whenever litigation arises out of business transactions conducted across state lines between parties whose principal places of business are in different states, there may be hardship to the party required to litigate away from home. There is no constitutional requirement, however, that this hardship must invariably be borne by the plaintiff whenever the defendant is not deemed present in the state of plaintiff's residence. In some circumstances there is adequate basis for jurisdiction when the defendant has elected to deal with the plaintiff even though only by mail. * * * Again, there is jurisdiction when the cause of action arose out of the breach of a contract made and to be performed in the state * * *."[13] (Citations omitted.)

Based on this reasoning, the motions of the defendant to quash the service of process and dismiss the action must be denied.

11. Cf. Restatement (Second), Conflict of Laws § 84, comment c at 91 (Tent. Draft No. 3, 1956). "It is reasonable that a state should have judicial jurisdiction over any individual as to causes of action arising from an act done for pecuniary profit having substantial consequences within the state even though the act is an isolated act not constituting the doing of business within the state."
In this case the pleadings suggest that the major losses to Kornfuehrer came from his inability to meet resale agreements made here. This type of damage could be considered a "substantial consequence" within the State.

12. The most recent summary of the law on the issue of whether a single contract will serve as a basis for jurisdiction is in State ex rel. Coral Pools, Inc. v. Knapp, 131 S.E.2d 81 (W.Va.1963). The court upheld its jurisdiction over the parties in a suit based on an oral contract in which a non-resident agreed to install a swimming pool for the plaintiff. Whether or not the major part of the performance was to occur out of State appears to have turned on which party's version of the contract was accepted. The case is typical in placing reliance on where the contract was "accepted" or "made" as a ground for jurisdiction. Except to the extent that such conflict of laws considerations may determine the applicable law in a given case, they seem like excessively technical points on which to base a finding of minimum contacts. I place no reliance on them in the case now before me.
See also: Compania De Astral SA v. Boston Metals Co., 205 Md. 237, 107 A.2d 357 (1954) cert. denied 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738 (1955); Beck v. Spindler, 256 Minn. 543, 99 N.W. 2d 670 (1959); S. Howes Co. v. W. P. Milling Co., 277 P.2d 655 (Okl.1954). Each of these cases asserted jurisdiction over the defendant even though his only contact with the State, as indicated by the record, had been the contract on which he was being sued. However, each of the defendants had, at some point, sent an agent into the State in connection with the contract.

13. Henry R. Jahn & Son, Inc. v. Superior Court, 49 Cal.2d 855, 323 P.2d 437, 440–441 (1958) (Traynor J.) (In Bank) (The Court was not, however, presented with the problem of a single transaction.)