**Homer A. BONHIVER, as Receiver of American Allied Insurance Company, Plaintiff,**

**v.**

**LOUISIANA BROKERS EXCHANGE OF BATON ROUGE, INC., Defendant.**

**No. 3–66–Civil 63.**

United States District Court
D. Minnesota,
Third Division.
May 17, 1966.

R. L. Sorenson and Briggs & Morgan, St. Paul, Minn., for plaintiff.

A. Patrick Leighton and Faricy, Moore, Costello & Hart, St. Paul, Minn., for defendant.

## MEMORANDUM

LARSON, District Judge.

Homer Bonhiver, Receiver of an insolvent Minnesota insurance corporation, American Allied Insurance Company (Allied), commenced this action against defendant Louisiana Brokers Exchange of Baton Rouge, Inc., (Brokers), a Louisiana corporation, based upon a contract between the parties.

Service upon defendant was accomplished in accordance with the Minnesota One Act Statute, Minn.Stat. § 303.13 Subd. 1(3).[1] In an action arising from

1. Minn.Stat. § 303.13, Subd. 1(3), provides:

"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation aris-

a contract between a foreign corporation and a Minnesota resident, which calls for performance in whole or in part by either party in Minnesota, that statute authorizes substituted service upon the Secretary of State. Contending it had no contacts with Minnesota sufficient to justify substituted service, defendant moves to quash and set aside the summons, and for dismissal of the action. While defendant suggests that service upon the Secretary of State under the One Act Statute is inappropriate for a foreign insurance company, the point is not pressed since defendant acknowledges

that the action could be reinstated by service on the Commissioner of Insurance.[2] In view of defendant's willingness to have the motion disposed of under the One Act Statute, there is no occasion to consider whether it was only a broker or agent, as plaintiff argues, rather than an insurance company.[3] Thus the questions for decision are whether the One Act Statute can be construed to apply to the circumstances of this case; and, if so, whether such a result would be consistent with "traditional notions of fair play and substantial

> ing from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state, together with a fee of $6 and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of such mailing, notwithstanding any other provision of the law. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota."

2. The One Act Statute does not expressly exclude foreign insurance companies. In Atkins v. Jones & Laughlin Steel Corporation, 258 Minn. 571, 104 N.W.2d 888 (1960), the statute was challenged on the ground that it violated the equal protection clause by excluding from its scope foreign insurance companies. In response to this argument, the Minnesota court noted that "adequate provision had [previously] been made for service of process upon foreign insurance companies under § 64.27." 104 N.W.2d at 894. That section provides in part:

> "Each foreign association now transacting business in this state and each such association applying for admission shall, before being licensed, appoint, in writing, the commissioner and his successors in office to be its true and lawful attorney, upon whom all legal process in any action or proceeding against it shall be served and, in such writing, shall agree that any lawful process against it, which is served upon such attorney, shall be of the same legal force and validity as if served upon the association, and

> that the authority shall continue in force so long as any liability remains outstanding in this state * * *."

This provision is located in the chapter dealing with fraternal benefit associations so it may be that it was not intended to be applicable to all types of foreign insurance companies. Possibly the limited scope of § 64.27 prompted the enactment, in 1961, of the Unauthorized Insurers Process Act, Minn.Stat.Ann. § 60.921, et seq. Enumerated acts within Minnesota, including the general phrase "transaction of insurance business,"

> "* * * shall constitute an appointment by such insurer of the commissioner of insurance and his successor or successors in office to be its true and lawful attorney upon whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance and any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this state upon such insurer * * *."

Minn.Stat.Ann. § 60.922 Subd. 1 (1961). Substituted service of process was also made possible with respect to surplus line insurance by virtue of Minn.Stat. § 60.944, enacted in 1963. Although no decision is called for on this point, it would seem that none of these sections is a substitute for the One Act Statute in the circumstances of this case.

3. Minn.Stat. § 60.02, Subd. 4, as amended in 1963, defines insurance company as follows:

> " 'Company' or 'insurance company' includes every corporation, business trust, or association engaged in insurance as principal."

justice"[4] embodied in the due process clause.

Plaintiff's action arises from an oral contract between defendant and Allied, by which defendant was to act as a broker in the sale of Allied insurance in Louisiana. Plaintiff seeks recovery of (1) premiums allegedly due Allied and (2) on an account stated. It appears that the contract was made in Louisiana.[5] In addition to this, defendant cites several other circumstances in support of its contention that it did not have contacts with Minnesota of sufficient magnitude to justify application of the statute in this case. Richard Cochran, defendant's president, states by affidavit that Brokers is not licensed to do business in Minnesota; maintained no agents or offices here; and wrote no insurance in this State. It is also stated that Allied sought out Brokers and solicited the business arrangement, officials of the former making more trips to Louisiana than Brokers' officials made to Minnesota. With respect to visits by its officials to Minnesota, defendant suggests they were primarily geared to generating good will rather than for the purpose of solidifying details of the contractual relationship. Nonetheless, Mr. Cochran indicates that at least one meeting in Minneapolis was convened for discussion concerning Brokers' handling of automobile insurance for Allied.

The various affidavits submitted by plaintiff present these additional facts. Forms, instructions, supplies, etc., were sent from Minnesota to Louisiana. Policies written by defendant were forwarded to Allied in Minnesota for acceptance or rejection. Premiums, less defendant's commission, were to be sent to Minnesota and Brokers mailed regular, routine reports to Allied in Minnesota. In addition, at least a portion of the travel expenses for Brokers' representatives were paid by Allied, including the cost of accommodations and entertainment in Minnesota. By corporate resolution, defendant authorized the establishment of an account with a Minnesota bank, and a $25,000 loan was obtained from that bank by defendant, secured by collateral of a Minnesota corporation, a subsidiary of Allied. According to Mr. Cochran, the account was opened and the loan obtained in connection with Brokers' issuance of automobile insurance for Allied.[6]

Despite their presentation of numerous factors indicating the existence or absence of jurisdictional contacts with Minnesota, each party relies primarily on a single facet of the relationship between Brokers and Allied in support of their respective arguments. On the authority of Fourth Northwestern Bank v. Hilson Industries, Inc., 264 Minn. 110, 117 N.W.2d 732 (1962), defendant maintains the controlling aspect of the relationship is that Allied, the Minnesota resident, was the aggressor. Plaintiff, citing Kornfuehrer v. Philadelphia Bindery, Inc., 240 F.Supp. 157 (D.Minn. 1965) and Paulos v. Best Securities, Inc., 260 Minn. 283, 109 N.W.2d 576 (1961), argues that defendant's obligation to remit the net premiums to Minnesota is sufficient to uphold substituted service under the One Act Statute.

The *Hilson* case was a suit by a resident corporation to recover on three promissory notes executed by the nonresident corporate defendant in Ohio, but

---

4. This familiar phrase often associated with International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), was enunciated in Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

5. Defendant so states, and plaintiff has no information as to where the contract was made, due to lack of cooperation by the former officials of Allied.

6. "As a further requirement for said automobile insurance, in March of 1965 Louisiana Brokers Exchange was requested to deposit $25,000 with American Allied and officials of American Allied arranged for the money to be obtained by Louisiana Brokers Exchange at the Phalen Park State Bank; Mr. Smith of Louisiana Brokers Exchange went to St. Paul, obtained the loan, deposited the money in an account opened specifically for that purpose and immediately issued a check to American Allied."
Affidavit of Richard M. Cochran, Jr.

made payable in Minnesota. Service under the One Act Statute was quashed on the ground that the only connection with Minnesota was that the notes were payable here. Particular emphasis was placed on plaintiff's status as a corporation, rather than an individual, and on the fact that it had taken the initiative in seeking to do business with defendant. Feeling that a resident corporate seller needs less protection than a resident individual buyer, the Court stated, "It would seem shortsighted indeed to discourage the sale of Minnesota products to nonresidents by subjecting buyers to our jurisdiction where the contacts are so casual." [7] The Court was also impressed by defendant's attempt to accommodate plaintiff by making the notes payable in Minnesota. The relationship between the parties in *Hilson* arose when plaintiff, the Minnesota resident, sold coolers to defendant. When the product proved defective, defendant refused to pay the contract price and plaintiff went to Ohio to discuss the matter, which was resolved by defendant's execution of the promissory notes. Pointing out that "the dispute here does not concern the making or negotiating of the promissory notes but involves the alleged breach of warranty in the sale of the plaintiff's products," [8] the Court also based its decision on balancing of the inconveniences. Indicating that it would be necessary to present the cooler at trial (the cooler weighed over a ton) and testimony of defendant's complaining customers, the Court concluded trial at defendant's locale would be more convenient.

While upholding jurisdiction may have a deterrent effect on the sale of insurance by Minnesota companies through nonresident brokers, *Hilson* does not suggest this consideration will prevent assertion of jurisdiction where the contacts are more than casual. In addition, the question of relative trial convenience does not have the same significance here since bulky exhibits are probably not required, and undoubtedly few witnesses outside of the contracting parties will be necessary.

■ An aspect of the *Hilson* case which defendant deems significant is that Allied was the aggressor in that it sought the relationship. While this factor is mentioned in *Hilson,* my opinion in the *Kornfuehrer* case, supra, indicates the view of this Court that who makes the first contact is not determinative. Discussing McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), I stated:

> "The business relations between the parties will not usually depend on the method by which contact was established. Therefore, once the non-resident undertakes to perform a business contract with a Minnesota resident, this Court does not feel that the question of who made the first contact is material." [9]

Although interpretation of a State statute is involved, which calls for adherence to the decisions of the Minnesota court, focus on the initial aggressor in *Hilson* should not obscure the fact that the court there found no contacts with Minnesota other than the notes being payable here. In this respect the instant case is distinguishable from *Hilson* and is more analogous to Dahlberg Company v. Western Hearing Aid Center, 259 Minn. 330, 107 N.W.2d 381 (1961), cert. denied, 366 U.S. 961 (1961), decided prior to *Hilson* and distinguished therein. In *Dahlberg* like *Hilson* and the instant case, the action was by a resident corporation. There plaintiff sued three interrelated Oregon corporations based on promissory notes and an open account. Plaintiff manufactured hearing aids, and the dominant defendant corporation was a distributor. The parties entered into a distributorship contract, renewable yearly, under which the nonresident defendant was to furnish plaintiff with sales reports and receipts of payments for prod-

7. 117 N.W.2d at 736.

8. Id., at 737.

9. 240 F.Supp. at 161 n. 7.

ucts sold. Although it does not appear that the distributorship contract was made in Minnesota, the notes were executed, delivered, and made payable in Minnesota. In addition, defendants' common representative Jones attended several meetings and conferences in Minnesota.[10] On these contacts substituted service was upheld, the Court noting that the nonresidents "have enjoyed the benefits of the laws of this state and they have had access to our courts to enforce any rights in regard to the transactions involved."[11] In discussing this decision in the *Hilson* case, the court also highlighted the extended course of dealing between the parties in *Dahlberg* and their close business relationship.

The same can be said of the relationship here. Representatives of defendant visited Minnesota on several occasions, during which they enjoyed the benefits and protection of this State. Brokers and Allied commenced their relationship at the beginning of 1965 and undoubtedly it would have continued but for the insolvency of Allied. That defendant had this expectation is suggested by its letter to the Minnesota bank in which it opened an account, wherein it is stated, "We are looking forward to a long and pleasant relationship." In its dealings with that bank, including the substantial loan personally consummated by defendant's vice president in Minnesota, the bene-

fits and protection of this State have been extended to defendant.

These personal contacts grew out of the contractual relationship, and in addition, some portion of the contract was actually performed here. Application of the One Act Statute springs from performance in Minnesota of some part of the contract, by either party. Plaintiff finds this performance in defendant's obligation to send the net premiums to Allied here. This raises the question of whether the act was performed in the remitting State, or in Minnesota, the receiving State. Cited by plaintiff, Kornfuehrer v. Philadelphia Bindery, Inc., and Paulos v. Best Securities, Inc., supra, indicate that where a resident buyer mails payment from Minnesota to a nonresident seller, the act is performed here.[12] Here, however, the situation is a little different. While Allied had an obligation to pay for the services rendered by defendant, that obligation would be satisfied when defendant deducted its commissions from the premiums received in Louisiana. If Allied stands in the position as the resident plaintiff in *Kornfuehrer* and *Paulos,* then payment was not made in Minnesota. Even if that is the necessary conclusion, other acts in furtherance of the contract were executed here. The routine reports and policy applications are not in the same category as payment since Allied had to take action in Minnesota

10. Another facet of the relationship between the parties is discussed in Dahlberg Company v. American Sound Products, 179 F.Supp. 928 (D.Minn.1959), in which plaintiff was unsuccessful in attempting to uphold service under the One Act Statute on an Illinois corporation with whom Jones become associated. The suit was based on Jones' alleged tortious conduct in Minnesota by obtaining plaintiff's trade secrets for transmittal to the Illinois defendant.

11. 107 N.W.2d at 385.

12. In *Kornfuehrer,* the resident individual buyer negotiated with defendant through the mail for the purchase of spring back binders. Although he never actually made payment, since the suit was for anticipatory breach of contract, this Court held

contemplated payment, from Minnesota, along with expected delivery of the goods to Minnesota would suffice, relying on the *Paulos* case. There a resident individual purchased securities through mail and telephone communications. The payment was sent from Minnesota, and the securities were mailed to plaintiff in Minnesota. Thus, both cases considered payment sent *from Minnesota* to be an act done in this State; while shipment from another State, *to Minnesota,* was also deemed an act performed here. McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), also suggests that payment from the forum State and delivery to that State gives a contract substantial connection with the forum.

with respect to these items. The policies had to be accepted or rejected; the reports had to be studied. Moreover, defendant's establishment of a bank account and borrowing money were Minnesota acts in furtherance of the contract.

In summary, there was a continuing relationship between defendant and Allied; defendant's agents have been actually present within the State; and both defendant and Allied were required to discharge contractual duties within Minnesota. These factors render defendant amenable to process under the One Act Statute.[13]

The contacts just noted are also sufficient to uphold jurisdiction against a due process challenge. The pertinent Supreme Court decisions were reviewed and analyzed by the Eighth Circuit in Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965), and need not be reiterated here.[14] Capsulizing the governing principles distilled from these decisions, the Court stated:

"We observe, however, that, at one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and that two others, interest of the forum state and convenience, receive mention."[15]

In terms of quantity, suffice to note that the brokerage contract between Allied and defendant contemplated a continuous relationship; this was not a single policy agency agreement. In addition, defendant's representatives were in Minnesota on more than one occasion. Apart from the direct contact between the contracting parties, there was contact with a resident bank. One indication of the quality of the contacts is the substantial loan, referred to above. The nature of the relationship between Allied and defendant was such that the former's subsidiary provided the collateral. Although this transaction was collateral to the brokerage contract, it was in furtherance of that agreement. Defendant might well have anticipated being subject to the jurisdiction of a Minnesota court in connection with that loan, as well as with the contract. As to the third factor, it is quite clear that plaintiff's cause of action emanates directly from the contract which prompted the contacts with Minnesota.[16] Not only does this State have an interest in the resident contracting party, but it also has a substantial interest in affording a forum where plaintiff, as receiver of that corporation, may protect the interests of Minnesota policyholders and creditors. While the last factor, that of convenience, is not particularly critical here, it might be noted that defendant apparently encountered no hardship in coming to Minnesota to discuss business, generate good will, or negotiate a loan. Thus, I conclude that due process is not offended by requiring defendant to litigate in Minnesota. Defendant's motions must therefore be denied.

13. Since each case turns upon the specific contacts involved, it is unnecessary to review the growing number of decisions under the statute. Many are summarized and discussed in Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965). It might be noted, however, that the Minnesota court takes a broad and liberal approach to the statute. See McDermott v. Bremson, 139 N.W.2d 809 (Minn.1966); Paulos v. Best Securities, Inc., 260 Minn. 382, 109 N.W.2d 576 (1961); Note, 42 Minn.L.Rev. 909, 194 n. 29 (1958).

14. See, e. g., Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). These cases are also discussed in my opinion in Williams v. Connolly, 227 F. Supp. 539, 542–544 (D.Minn.1964).

15. 343 F.2d at 197.

16. Professor Moore suggests that where the contacts are substantial, jurisdiction is permissible even though the particular cause of action does not arise out of these contacts. See 2 Moore, Federal Practice, Par. 2.25 [5], quoted in Aftanase v. Economy Baler Company, 343 F.2d at 196, n. 2.