ELECTRO–CRAFT CORPORATION,
Appellee,

v.

MAXWELL ELECTRONICS CORPORA-
TION, Appellant.

No. 19380.

United States Court of Appeals
Eighth Circuit.

Oct. 15, 1969.

Jerome B. Pederson, of Fredrikson, Byron & Colborn, Minneapolis, Minn., for appellant.

Harold D. Field, Jr., of Leonard, Street & Deinard, Minneapolis, Minn., for appellee.

Before BLACKMUN, LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This appeal raises the familiar problem of in personam jurisdiction, by substituted service, over a foreign corporation. The District Court denied the defendant's motion to quash service of process and to dismiss. We affirm.

The plaintiff, Electro-Craft Corporation, is a Minnesota corporation engaged in the manufacture of small motors and military radio communications' equipment. The defendant, Maxwell Electronics Corporation, is a Texas corporation engaged in the manufacture of receiver-transmitters. On June 25, 1964, the plaintiff wrote to the defendant and stated that it would be interested in representing the defendant in the sale and distribution of military electronic equipment. The defendant responded that it would be interested in obtaining an order for receiver-transmitters. Negotiations by mail and telephone continued for approximately one year. During the year, a representative of the plaintiff traveled to Texas to view the defendant's manufacturing facilities. As a result of the negotiations, the plaintiff mailed from Minnesota to Texas an

order for 320 receiver-transmitters, and the defendant mailed an acceptance from Texas to Minnesota.

Under the terms of the contract, the receiver-transmitters were to be shipped F.O.B. Garland, Texas, to plaintiff's plant in Minnesota. Payment was to be made pursuant to a letter of credit of the First National Bank of Dallas, the plaintiff having first made arrangements with the First National Bank of Minneapolis to authorize the Dallas bank to honor drafts, totaling $152,000 if accompanied by various commercial documents [1] including (1) a written acceptance signed by the plaintiff acknowledging that the units had been received and inspected or that the units had been received and inspection waived, and (2) a warranty in the following form: "Maxwell Electro Corporation does warrant all equipment against defective workmanship, components and parts (with the exception of tubes and lamps) for a period of 120 days from the date of shipment. This warranty is limited to the manufacturer's warranty for the individual components and parts."

Between November 1, 1965, and November 22, 1965, the defendant made five shipments of receiver-transmitters totaling 278 units to the plaintiff in Minnesota. A representative of the plaintiff inspected eighty-five units and spot tested thirty-five more at the defendant's Texas plant. Inspection was waived on an additional 158 units, eight of which were not accepted by the plaintiff. Drafts on all units shipped were paid when the required documents were presented to the Dallas bank by the defendant.

The defendant never had an officer, employee or agent in Minnesota, never maintained an office or any physical facility in Minnesota, never advertised directly in Minnesota, and never qualified to do business in Minnesota. The defendant was not obligated to send a representative to Minnesota to install the receiver-transmitters or to service the units under the warranty. The transaction involved here is the only one between the parties.

The Plaintiff commenced this action in a Minnesota state court on grounds of fraud, misrepresentation, breach of contract and breach of warranty. It alleged that the receiver-transmitters did not conform to the specifications as represented by the defendant. Substituted service was purportedly effected upon the defendant pursuant to the Minnesota One Act Statute, Minn. Stat. § 303.13, Subd. 1(3) (1965).[2] The cause was removed to the United States District Court, District of Minnesota; the defendant's motion to quash service of process and to dismiss was denied; and this appeal was taken by permissive interlocutory appeal.

---

1. The other required documents included the following: (1) a bill of lading, (2) a commercial invoice, (3) a certificate of the defendant that the goods shipped conformed to the contract of sale, and (4) a signed certificate of the defendant that the originals of all the documents had been mailed to the First National Bank of Minneapolis at the time of shipment.

2. Minn.Stat. § 303.13, Subd. 1(3) (1965), reads in part:
"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. * * * The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the state of Minnesota."

Two questions are raised on appeal: (1) whether the Minnesota Supreme Court would find in personam jurisdiction over the defendant by substituted service pursuant to Minnesota's One Act Statute, Minn.Stat. § 303.13, Subd. 1(3) (1965), and, if so, (2) whether the exercise of jurisdiction would violate the defendant's right to due process of law under the Fourteenth Amendment.

Under the Minnesota Statute, jurisdiction is obtained over a foreign corporation through substituted service if (1) the corporation and a Minnesota resident are parties to a contract to be performed at least partially by either party in Minnesota; or (2) the corporation commits a tort in whole or in part in Minnesota against a Minnesota resident.

In Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965), we reviewed the Minnesota cases[3] interpreting the One Act Statute. A reappraisal of those cases and a study of the cases decided since our 1965 decision[4] convinces us that the Minnesota Supreme Court would conclude that the facts here warrant the application of the statute to the defendant.

If the plaintiff's action is viewed as sounding in contract, the language of the statute is satisfied because the contract was obviously partially performed by the plaintiff in Minnesota.[5] Furthermore, the nature of the transaction was such as to satisfy the minimum contact requirements[6] of the Minnesota Supreme Court for the exercise of jurisdiction.

3. In Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965), we reviewed the following Minnesota cases which upheld jurisdiction over a nonresident seller: Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W.2d 824 (1963); Paulos v. Best Securities, Inc., 260 Minn. 283, 109 N.W.2d 576 (1961); Adamek v. Michigan Door Co., 260 Minn. 54, 108 N.W.2d 607 (1961); Dahlberg Co. v. Western Hearing Aid Center, Ltd., 259 Minn. 330, 107 N.W.2d 381 (1961), cert. denied, 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253 (1961); Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888 (1960); Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670 (1959). In one case, involving a nonresident buyer, the Minnesota Supreme Court denied jurisdiction: Fourth Northwestern Nat. Bank v. Hilson Industries, 264 Minn. 110, 117 N.W.2d 732 (1962).

4. Hagberg v. Colonial & Pacific Frigidways, Inc., 279 Minn. 396, 157 N.W.2d 33 (1968); Marshall Egg Transport Co. v. Bender Goodman Co., 275 Minn. 534, 148 N.W.2d 161 (1967); McDermott v. Bremson, 273 Minn. 104, 139 N.W.2d 809 (1966). Hagberg and McDermott shed little, if any, light on the question here, and Marshall Egg Transport is distinguished in the opinion. For a discussion of this area, see, 52 Minn.L.Rev. 723 (1968); Comment, Due Process and Foreign Corporations—The Minnesota Single Act Statute, 50 Minn.L.Rev. 946 (1966).

5. In Kornfuehrer v. Philadelphia Bindery, Inc., 240 F.Supp. 157 (D.Minn.1965), the court denied the nonresident defendant's motion to quash service of process. Interpreting the Minnesota One Act Statute, the court stated:

"The fact that the Bindery was to ship the goods into Minnesota would also satisfy the statutory tests. The shipment was to be f. o. b. Philadelphia and those shipping terms have served as the basis for an argument on the part of the Bindery that no part of the contract was to be performed by it in Minnesota. "Actually the argument seems irrelevant. If the transfer of the binders is not considered a part of the defendant's performance, then it is part of the plaintiff's. Any realistic treatment of the transaction must view the carrier bringing the shipment as the agent of one or both of the parties. As mentioned earlier, the One Act statute applies when an act of either party is to be performed in Minnesota."

Id. at 159–160.

Under a literal interpretation of the One Act Statute, the Minnesota Supreme Court could have exercised jurisdiction over the nonresident buyers in Marshall Egg Transport and in Fourth Northwestern. The denial of jurisdiction in those cases indicates that the Minnesota Supreme Court requires something more than mere "partial performance by either party."

6. These requirements closely parallel those necessary to satisfy due process requirements. They are discussed in more detail in a subsequent section of this opinion. See, Washington Scientific Indus., Inc. v. Polan Industries, Inc., 273 F.Supp. 344

The plaintiff was a resident buyer; it conducted negotiations for the purchase of equipment of significant value by mail and phone from Minnesota; it placed an order for the equipment in the mail in Minnesota; and, it made arrangements to pay for the equipment through a Minnesota bank. The seller, a nonresident, completed the transaction with full knowledge of the buyer's residence and shipped the equipment directly to it.

If the plaintiff's action is viewed as sounding in tort, substituted service can be supported on the ground that the tort was partially committed in Minnesota—the injury to the plaintiff occurred in that state.[7]

The defendant cites Marshall Egg Transport Co. v. Bender Goodman Co., 275 Minn. 534, 148 N.W.2d 161 (1967), as authority for its position that the Minnesota court would not find jurisdiction here. We do not agree. There, a Minnesota *seller* brought an action against a nonresident *buyer* to recover for the price. Relying on Fourth Northwestern Nat. Bank v. Hilson Industries, 264 Minn. 110, 117 N.W.2d 732 (1962), the court granted the nonresident buyer's motion to quash service of process. Quoting from *Fourth Northwestern*, the court stated:

" * * * [T]here is a sharp distinction between suing a nonresident seller and invoking § 303.13 against a nonresident buyer."

148 N.W.2d at 164.

One reason for this distinction, articulated by the Minnesota Supreme Court, was that a nonresident seller subjects itself to the obligation of amenability to suit in return for the right to compete for sales in the Minnesota market. Such reciprocity does not apply to the nonresident buyer. We recognized this distinction in *Aftanase* with regard to *Fourth Northwestern* and we feel that the distinction is controlling here. The defendant contracted for a means of payment that might obviate the necessity of its suing in a Minnesota court to recover the price, but its right to do so, if necessary, remained.

We turn to the due process question. The answer to it depends upon whether the defendant's contacts with Minnesota were such that "the maintenance of the suit [in Minnesota] does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).[8] In *Aftanase*, supra, we outlined five factors to be considered in determining whether the fair play and substantial justice requirements were satisfied: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience to the parties. A consideration of these factors convinces us that the exercise of jurisdiction was consistent with constitutional requirements.

(1 & 2) The quality and the quantity of the contacts were such as to satisfy the requirements.

(a) The defendant purposely availed itself of the privilege of doing

(D.Minn.1967); Bonhiver v. Louisiana Brokers Exchange, Inc., 255 F.Supp. 254 (D.Minn.1966); Paulos v. Best Securities, Inc., *supra*; Dahlberg Co. v. Western Hearing Aid Center, Ltd., *supra*; Beck v. Spindler, *supra*.

7. Aftanase v. Economy Baler Company, *supra*; United Barge Co. v. Logan Charter Service, Inc., 237 F.Supp. 624 (D.Minn.1964); Ehlers v. United States Heating & Cooling Mfg. Corp., *supra*; Adamek v. Michigan Door Co., *supra*; Beck v. Spindler, *supra*. But see,

Pendzimas v. Eastern Metal Products Corp., 218 F.Supp. 524 (D.Minn.1961); Mueller v. Steelcase, Inc., 172 F.Supp. 416 (D.Minn.1959).

8. See also, Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 15 L.Ed.2d 39 (1965, Mr. Justice Goldberg, Circuit Justice), appeal dismissed 382 U.S. 1002, 86 S.Ct. 533, 15 L.Ed.2d 491 (1965).

business with a Minnesota resident. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It entered into a transaction having an impact on the commerce of that state. By so doing, it invoked the benefit and protection of Minnesota's laws and could reasonably have anticipated that its act would have consequences in Minnesota. The fact that no agents of the defendant entered the state is not controlling. Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968).

(b) While the plaintiff initiated negotiations with the defendant, the defendant actively and voluntarily participated in them thereafter. Southern Machine Company v. Mohasco Industries, Inc., *supra*; Shealy v. Challenger Manufacturing Company, 304 F.2d 102, 104 (4th Cir. 1962).[9]

(c) While the contract was consummated in Texas,[10] contractual consequences were reasonably anticipated in Minnesota.

(d) While the equipment was shipped F.O.B. Texas, the defendant made arrangements for the shipment and knew that the equipment was being shipped directly to a Minnesota resident without passing through an intervening dealer.

(e) While the defendant structured the transaction so as to be able to secure payment at a Texas bank without maintaining an action in Minnesota for the price, he could have used the Minnesota courts to obtain payment, particularly if the plaintiff had received but failed to acknowledge receipt of the shipment in Minnesota.

(f) The defendant made full use of the arteries of interstate commerce to complete the contract. Interstate mail, telephone and trucking facilities were used by the defendant in completing the transaction. In addition, interstate banking facilities, including those of a New York bank, were used in setting up the payment procedures. Thus, it can hardly be said that the transaction from a practical point of view was a Texas one.

(g) The transaction was a significant one involving the sale and shipment of 278 units over a period of twenty-one days. The value of the units exceeded $132,000.[11]

(3) The cause of action clearly arose out of the defendant's contacts with the Minnesota resident.

9. In Shealy v. Challenger Manufacturing Company, 304 F.2d 102 (4th Cir. 1962), the Court stated:
"* * * If the defendant, like the maker of the better mousetrap, is fortunate enough to get the business without active solicitation, it does not gain immunity from an exercise of jurisdiction by those states in which it engages in substantial activity of a different sort. A foreign corporation, busily present in a state effecting direct deliveries of its wares to its customers, cannot escape the jurisdiction of the state upon the ground its orders were unsolicited. A seller's distribution of his wares may be a substantial activity whether the precedent contracts were solicited by the buyers or by the seller."
*Id.* at 104.

10. In Travelers Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950), the Supreme Court rejected the argument that a state's exercise of jurisdiction must be determined by the place of contracting:
"* * * Instead we accorded 'great weight' to the 'consequences' of the contractual obligations in the state where the insured resided and the 'degree of interest' that state had in seeing that those obligations were faithfully carried out."
*Id.* at 647–648, 70 S.Ct., at 930.

11. The fact that there was only one transaction between the parties is not controlling. See, Elkhart Engineering Corporation v. Dornier Werke, 343 F.2d 861 (5th Cir. 1965) ; Compania De Astral, S.A. v. Boston Metals Co., 205 Md. 237, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646 (1954), cert. denied, 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738 (1955) ; Smyth v. Twin State Improv. Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 (1951).

(4 & 5) The interest of Minnesota in providing a forum for its resident under the circumstances of this case is obvious. The convenience of the parties does not appear to be a material consideration and is not urged as such by the parties.

We express no opinion on the merits but affirm for the reasons stated.

Ely, Circuit Judge, dissented.